## II. OPINIONS DELIVERED IN CHAMBERS.

### Ex parte Anderson.

1. Habeas corpus: contract of enlistment: jurisdiction. The State courts have concurrent jurisdiction with the Federal courts to inquire into the validity of an enlistment with the army of the United States.

2. Same: military offenses. Where the return to a writ of habeas corpus shows that the prisoner is held to answer to a charge of the military crime of desertion, of which the military courts of the United States have exclusive jurisdiction, the court will not inquire into the validity of his enlistment, but will remand him for trial by the court which has jurisdiction of the offense.

*Heard and decided by* Mr. Justice Dillon, *at his chambers in the city of Davenport.*

The facts will appear in the opinion.

*C. Whitaker* for relator—*B. F. Roberts* for respondent.

Dillon, J.—The relator, John H. Anderson, procured a writ of *habeas corpus* to be issued by me, directed to Lieutenant Peckenpaugh, in command of Post McClellan.

The object of the proceeding was to procure the discharge of his minor son from the military custody, in which he is held. Lieutenant Peckenpaugh returns to the writ that the person sought to be released is in his custody, but that, as an officer of the United States army, he claims to hold him for trial before a court martial for the military offense of desertion. To this return the relator demurs and also moves for an attachment, for reason of its alleged insufficiency. Thus the question of the insufficiency of the return is fully and fairly presented. It was admitted by the pleadings that the relator's son was a minor when he enlisted, and that his enlistment was without his father's consent. It may be further remarked, that acting under orders from the War Department, the respondent refused to produce the body of the person, and sought to be released because, 1st, of the alleged want of jurisdiction of a State court or judge in cases of this sort; and, 2d, because the crime of desertion is a military offense, and as such is exclusively cognizable before a military tribunal.

On the argument the respondent, who appeared by Brigadier-General Roberts, the military commander of this district, made two points:

1st. That a State court or judge under the Constitution of the United States and the laws of Congress, has no jurisdiction in cases of this kind, such jurisdiction being exclusively in the courts of the general government.

2d. That if the State courts had jurisdiction, still they could not properly exercise it so as to release a person who is detained by the military authorities for trial before a military court for a military offense.

Whether the State courts have jurisdiction by *habeas corpus*, when the return shows that the prisoner is detained by an officer of the United States, by color, or under authority of the United States, has been very much discussed, and the result of my examination of cases like the present shows that the question is far from being settled· Story on the Constitution, section 1757. The earliest case was that of Husted (A. D. 1799), when the return to the writ showing that Roberts, a minor, was detained as a seaman who had voluntarily enlisted, the State court, in Maryland, refused to interfere. 2 Hall, Law J., 192; cited also in *Fugerson's case*, 9 Johns., 239. In *Fugerson's case* (A. D. 1812), Chancellor KENT doubted the jurisdiction of the State courts, and refused to allow the writ on the grounds that the jurisdiction of the federal courts was unquestionable, and that, therefore, resort ought to be had to them. Yet in subsequent cases in that State, the State courts have asserted and exercised a concurrent jurisdiction with Federal courts. *Matter of Stacy*, 10 Johns., 328, where the writ was directed to Morgan Lewis, General of Division in the army of the United States, and where the court, KENT himself delivering the opinion, ordered an attachment against Gen. Lewis for making an evasive return. *Carlton's case*, 7 Cowen, 471; *United States* v. *Wyngall*, 5 Hill (N. Y.), 16. In Massachusetts, the State courts have constantly exercised jurisdiction by *habeas corpus* to inquire into the validity of enlistments in the army and navy of the United States, although I do not find that the question of their jurisdiction was ever expressly raised. See *Com.* v. *Downes*, 24 Peck, 227 (A. D. 1831); *Same* v. *Harrison*, 11 Mass., 63 (1814); and *Same* v. *Cushing*, Id., 67.

So in New Jersey, the Supreme Court in *The State* v. *Breary*, 2 South, 555 (A. D. 1819), distinctly asserted the concurrent jurisdiction of the State courts.

In Pennsylvania the jurisdiction of the State courts has been uniformly maintained. *Lockington's Case* (1813), 5 Hall, L. J., 92; Bright's R., 260; *Com.* v. *Gamble*, 11 Serg. & R., 93; *Com.* v. *Fox*, 7 Penn. State R., 336 (A. D. 1847).

In the case last cited the return to the writ of *habeas corpus* stated that the prisoner had enlisted in the army of the United States, had

deserted, and surrendered himself. It was proved that he was a minor son of the relator, who had never assented to his enlistment. The point was distinctly made that the State court had no jurisdiction, and that the prisoner could be discharged only by a court of the United States. But the court, referring to the matter of *Carlton,* 7 Cowen, 471; *Com.* v. *Harrison,* 11 Mass., 63; Sergeant's Const. Law, 287, held that the jurisdiction of the state and the federal courts were concurrent. It was further held, under the act of Congress of March 16, 1802, § 11 (which inflicts a penalty upon an officer who enlists a minor), that the enlistment of a minor was void. The court regarded the circumstances of the minor having left the custody of the officer, or deserted, as making no material difference in the case, and the prisoner was discharged. They remark that "it does not appear from the return of the officer that the minor is under arrest for the crime of desertion, and is to be tried by a court martial. That might possibly make some difference."

In *Carlton's case,* 7 Cowen, 147, and in *The State* v. *Dimick,* 12 N. H., 194, it was contended, that where it was sought to discharge a person from custody by reason of an invalid enlistment (these were both cases of minors,) the federal courts alone had jurisdiction. But in both of these cases, the State courts held, that a return to the writ setting forth that the petitioner is held as an enlisted soldier of the United States Army, did not oust the jurisdiction of the State courts, but that the latter tribunals were bound to inquire whether the petitioner was lawfully held under the laws of the United States, and if not, he is entitled to a discharge. On this point, C. P. Parker remarks: "If the laws of the United States justify the detention of the applicant, there is nothing illegal. If they do not, it is not a case arising under the laws of the United States, although it may be under color or pretense of authority by virtue of those laws; but such a pretense is no better than any other pretense."

Hurd, in his recent work on *Habeas Corpus,* after reviewing various decisions on the subject of the jurisdiction of the State courts, thus concludes, p. 166:

"It may be considered settled that State courts may grant the writ in all cases of illegal confinement under the authority of the United States."

It is very plain that prior to the decision of the Supreme Court of the United States in the celebrated *Booth case,* 21 How., 506, the weight of authority was most unquestionably in favor of the concurrent jurisdiction of the State courts.

Since that decision, the Supreme Court of Michigan in the recent case of Jacob Spangler, reported in the American Law Register, August,

1863, have denied the jurisdiction of the State courts. On the other hand, Judge LEONARD, of the Supreme Court of New York, has more recently affirmed such jurisdiction. The *point* decided in the Booth case (on which only it is strictly authority), does not cover the questions arising in cases such as the one now before me. Whether the *principle* of that case is applicable to, and decisive of, cases like the present, is a very grave question, and one which I do not find it necessary, under the view I take of the case now under consideration, positively to pronounce upon. The writ of *habeas corpus* is intended for the protection of all the inhabitants residing within the territorial limits of the State. It is needless to enlarge upon its importance. As a judge or as a citizen, I shall make no complaint if it is found necessary to suspend it in Iowa, in order the more speedily to subdue the rebellion. But while the civil law is in full force, and the writ is not suspended, it is the duty of the judges, than which no duty can be more weighty and more responsible, faithfully to guard the personal liberty and security of the citizen.

And in this State, whose authorities, executive, legislative and judicial, are noted for their loyalty and devotion to the government, there is no ground to fear that the courts will *unjustly* exercise their powers to its prejudice. If there is any *inclination* at all, it is rather in *favor of* than *against* the government. I conclude my observations on this part of the case by saying, that my hasty examination since the argument on yesterday has failed to satisfy me, that the State courts have not jurisdiction concurrently with the federal courts to inquire into the *validity of an enlistment into the army of the United States*. As at present advised, I should exercise such a jurisdiction; and I have every reason to believe that the military authorities would not incur the odium or take the responsibility, in the loyal State of Iowa, of forcibly interrupting its exercise. Indeed, Gen. Roberts, on the argument, while not conceding the jurisdiction of the State tribunals, even in such a case, distinctly stated that he would not question it. But the return to the writ raises another and different question. The return states that the prisoner is held for the military crime of desertion for trial before a court martial. Both on principle and authority, this is a sufficient reason why he should not be set at liberty by the civil courts prior to his trial for his alleged military offense. Under the Constitution of the United States, Congress has exclusive power "to raise and support armies" and "to provide for the government and regulation of the land and naval forces." Under this power, Congress has acted. It has made desertion a high military offense. It has provided for the institution and regulation of courts martial.

These courts are governed by well settled rules; and if a person is

charged with a military offense, the military authorities have a right to detain him for trial, and if found guilty, for punishment. This would be so even if the party had also committed an offense against the civil laws. The court which first acquired jurisdiction would retain it, and could not be interfered with by the other.

But it is answered, that because of minority there was no valid enlistment, and if no valid enlistment there could be no desertion. The reply to this is, that this is a question for the military court. On a charge of desertion, infancy is no defense. Thus, Greenleaf, in treating of evidence in courts martial, says: "On a charge of desertion, or other offense against military discipline, it will be sufficient to prove that the accused received the pay, or did the duties of a soldier, without other proof of his enlistment or oath." The case of the *Commonwealth* v. *Gamble*, 11 Serg. & Rawle, 93, is precisely in point, and according as it does with my own views of the law, I cheerfully follow it as an authority to guide me in the decision of the present case. To a writ of *habeas corpus*, the United States officer returned that he held the applicant (who was proved to be a minor), because he enlisted in the marine corps of the United States, and that he was under arrest upon a charge of desertion. The question was on the validity of the enlistment. It was held by the Court, GIBSON, J., delivered the opinion, that whether the enlistment was valid or not, one under arrest upon a charge of desertion must abide the sentence of a court martial, before he can contest the validity of the enlistment. The Court say: "It appears, by the return to the writ of *habeas corpus*, that he (the applicant for the writ) is in confinement on the charge of desertion from his post; and the law is clear that he must abide the sentence of a court martial before he can contest the validity of the enlistment. There would be an end of all safety, if a minor could insinuate himself into an army, and after having perhaps jeoparded its very existence by betraying its secrets to the enemy, escape military punishment by claiming the privileges of infancy. The very camp followers are subject to military laws. But this principle is so well established, and so generally understood, that it is deemed unnecessary to enlarge on it, or cite authority in support of it. Prisoner remanded." See also *Com.* v. *Fox*, above cited. I therefore hold that the return of the respondent in this case, that he holds the prisoner for the crime of desertion, and that he is now awaiting his trial before a court martial, is sufficient, and that he must abide by the decision of the latter court, before the question of the validity of his enlistment can be determined in the civil courts on *habeas corpus*.

NOTE.—The above decision was made prior to the proclamation of the President suspending the right of *habeas corpus* in certain cases.