## EX PARTE REED.

1. The regularly appointed clerk of a paymaster in the navy is a "person in the naval service of the United States," within the meaning of art. 14, sect. 1624, of the Revised Statutes, and, for a violation of its provisions, is subject to be tried, convicted, and sentenced by a naval general court-martial.

2. The "regulations for the administration of law and justice" in that service, established by the Secretary of the Navy with the approval of the President, have the force of law.

3. Where, pursuant to such regulations, a general court-martial is duly ordered, the officer clothed with the revising authority may, before it is dissolved, direct it to reconsider its proceedings and sentence; and if it, upon being reconvened, renders a sentence which he approves, such sentence cannot be collaterally impeached for mere errors or irregularities, if any such were committed by the court while acting within the sphere of its authority.

4. A., the clerk of a paymaster in the navy, was, by a court-martial, found guilty of certain charges and specifications of malfeasance in the discharge of his official duties. Sentence was passed upon him, and transmitted, with the record, to the revising officer, who returned it with a letter stating that the finding was in accordance with the evidence, but that he differed with the court as to the adequacy of the sentence. The court proceeded to revise it, and, after revoking it, substituted another, which he approved, inflicting upon A. a severer punishment. A., who was imprisoned pursuant thereto, alleging that it was illegal and void, and that he was thereby unlawfully deprived of his liberty, prayed for a writ of *habeas corpus*. *Held*, that the court-martial had jurisdiction of the person and of the subject-matter, and was competent to pass the sentence whereof A. complained.

MR. GEORGE S. BOUTWELL presented the following petition of Alvin R. Reed for a writ of *habeas corpus*: —

" *To the Supreme Court of the United States:*

"The petition of Alvin R. Reed, of Medford, in the county of Middlesex and State of Massachusetts, respectfully shows, —

"*First,* That on or about the twenty-sixth day of June, A.D. 1878, your petitioner was ordered to appear before a naval general court-martial convened by Rear-Admiral Ed. T. Nichols, on board the U. S. ship 'Essex,' then stationed in the waters of Rio Janeiro, South America, to answer to certain charges and specifications of malfeasance in the discharge of his official duties as clerk to George L. Davis, then a paymaster in the navy of the United States.

"*Secondly,* That in obedience to said order your petitioner appeared before said court-martial, and on the fifth day of July,

A.D. 1878, pleaded not guilty to the several charges and specifications then made and read to him; and that thereupon, from day to day, the trial proceeded until the sixteenth day of July, A.D. 1878, when the said court-martial found him guilty of certain of the charges and specifications.

" *Thirdly*, That on the said sixteenth day of July, A.D. 1878, the court passed sentence upon your petitioner, made a record thereof in their proceedings, and transmitted the sentence to Rear-Admiral Nichols after the members of the court had affixed their signatures thereto.

" *Fourthly*, That on the nineteenth day of July, A.D. 1878, Rear-Admiral Nichols returned the said sentence to the president of the court-martial, with a communication in writing, in which the admiral says that the finding is in accordance with the evidence, but regrets to be compelled to differ with the court as to the adequacy of the sentence.

" *Fifthly*, That on the twentieth day of July, A.D. 1878, the court-martial proceeded to revise the sentence so returned, and adopted an order that the following sentence be placed on the record in substitution of the former sentence, which is hereby revoked : —

" ' That the said Alvin R. Reed, paymaster's clerk, U. S. Navy, be imprisoned in such place as the honorable Secretary of the Navy may designate for the term of two years; to lose all pay which may become due him during such confinement, excepting the sum of $10 per month, this loss amounting to $1,960; to be fined in the sum of $500, which fine must be paid before or at the end of the term of confinement. Should such fine not be paid at end of term of confinement, to be detained in confinement without pay until such fine be paid, and at the expiration of term of confinement to be dishonorably dismissed from the naval service of the United States.

" ' W. S. Schley, *Commander U. S. N., President of Court.*
H. T. Stancliff, *Past Assistant Paymaster and member.*
Chas. H. Black, *Lieutenant and member.*
E. S. Houston, *Lieutenant and member.*
Asa Walker, *Lieutenant and member.*
W. P. Day, *Lieutenant and member.*
Robert L. Mead, *Captain U. S. M. C., Judge Advocate.*'

" *Sixthly*, That the second sentence, so imposed, was more severe upon your petitioner than the sentence passed upon him on

the sixteenth day of July, A.D. 1878, and revoked by the court-martial as aforesaid.

"*Seventhly*, And your petitioner further represents, that in his capacity as paymaster's clerk, as aforesaid, he was not amenable to trial by court-martial, nor subject to the jurisdiction of said court.

"*Eighthly*, That under said second sentence your petitioner has been for a long time, and now is confined on the U. S. ship ' Wabash,' at the navy yard, Boston, Mass., and under the custody of Capt. S. L. Breese, commander of said ship.

"*Ninthly*, That on or about the twelfth day of April, A.D. 1879, your petitioner presented his petition to the Hon. John Lowell, Circuit Judge of the United States in the first circuit, praying for a writ of *habeas corpus;* that a hearing thereupon was had before the Hon. Thomas L. Nelson, Judge of the District Court, sitting in the said Circuit Court, and such proceedings were thereon had that on the twelfth day of June, A.D. 1879, the said Circuit Court, to which said writ was returnable, remanded your petitioner and discharged said writ.

"And your petitioner now is, and ever since the said twelfth day of June, A.D. 1879, has been, a prisoner confined on said ship, at the navy yard, at said Boston, in the custody of said S. L. Breese, under the said illegal sentence pronounced on him on the said twentieth day of July, A.D. 1878, and restrained of his liberty in violation of the Constitution of the United States and of the laws of the country.

"Wherefore your petitioner prays that a writ of *habeas corpus* issue directed to the said S. L. Breese, commander of the said ship ' Wabash,' commanding him to produce your petitioner before this honorable court, at the city of Washington, at such time as the court shall direct, and that he then and there show the cause of your petitioner's detention, to the end that your petitioner may be discharged from custody.

"And your petitioner also prays that a writ of *certiorari* may issue to John G. Stetson, clerk of the U. S. Circuit Court for the District of Massachusetts, commanding him to certify to your honorable court the petition of your petitioner before referred to, the return thereto, and all the records of said court respecting the same, and the adjudication thereon, to the end that the errors therein may be corrected by this honorable court.

"And your petitioner will ever pray.

"ALVIN R. REED.

"Dated BOSTON, Sept. 3, 1879."

The petition was duly verified, and the facts therein stated were set forth with more fulness and particularity in an agreed statement filed therewith.

*Mr. George S. Boutwell* for the petitioner.

## I.

The prisoner is now held by order of the Circuit Court, whereby he was remanded into the custody of Captain Breese, and this proceeding is in the nature of an appeal, in which is included the power of revision in the exercise by this court of its appellate jurisdiction. *Ex parte Yerger*, 8 Wall. 85; *Ex parte Vallandigham*, 1 id. 243.

Courts-martial are exceptional in their organization, jurisdiction, modes of procedure, and the rules by which findings are made or judgments pronounced. In an ordinary judicial tribunal, nothing, therefore, is to be presumed in their favor. *Brooks* v. *Adams*, 11 Pick. (Mass.) 442; *Dynes* v. *Hoover*, 20 How. 65.

Paymasters' clerks are only recognized indirectly in the chapter on the organization of the navy. By sects. 1386, 1387, 1388, Rev. Stat., paymasters and assistant paymasters are, under certain circumstances, allowed clerks. By sect. 1556 their pay is fixed. For the same reason, by sect. 1367, the admiral and vice-admiral are each allowed a secretary to aid in the discharge of their respective duties. Sect. 1366 provides that "the active list of the pay corps of the navy shall consist of thirteen pay directors, thirteen pay inspectors, fifty paymasters, thirty passed assistant paymasters, and twenty assistant paymasters." Sect. 1383 requires every paymaster, passed assistant paymaster, and assistant paymaster to give bonds for the faithful performance of his duties. No such obligation is laid upon paymasters' clerks, nor are they officers holding either commissions or warrants, nor are they deemed petty officers. Sect. 1410.

If a reasonable doubt exists whether paymasters' clerks are of the naval force and subject to the jurisdiction of a court-martial, the petitioner is entitled to the writ.

## II.

1. There is no common law of the United States. *Wheaton*
v. *Peters*, 8 Pet. 591. As the existence, jurisdiction, and
powers of courts-martial are exceptional, with stronger reason
it can be maintained that such courts have no common law,
and hence any reference to the usages or laws of Great Britain
is inapplicable to this case. In one particular, by the statute
of 1799 (1 Stat. 715), the common law of nations, which was
the law of Great Britain, was incorporated in our naval code.
The statute was in these words: "All faults, disorders, and
misdemeanors which shall be committed on board any ship
belonging to the United States, and which are not herein men-
tioned, shall be punished according to the laws and customs in
such cases at sea." It was superseded by art. 22, sect. 1624, Rev.
Stat., which provides that "all offences committed by persons
belonging to the navy which are not specified in the foregoing
articles shall be punished as a court-martial may direct."

The adoption, however, of one common-law rule by statute
excludes the idea that, by virtue of the Constitution, the naval
usages and laws of Great Britain became a part of our naval
code.

As Reed was tried upon the charge of malfeasance and
misdemeanors prohibited specifically in the rules and articles
for the government of the navy, his case did not fall under
art. 22.

2. Sect. 1624, Rev. Stat., provides a system for the organiza-
tion and conduct of naval courts-martial, and their proceedings
are valid only when the statutes are followed and obeyed.

3. As the case of the government is now understood by the
counsel for the petitioner, the act of Rear-Admiral Nichols, in
sending the sentence of the 17th of July to the court for revi-
sion, is justified under art. 54 of sect. 1624 of the Revised
Statutes, which declares that "every officer who is authorized
to convene a court-martial shall have power, on revision of its
proceedings, to remit or mitigate, but not to commute, the
sentence of any such court which he is authorized to approve
and confirm;" and by sect. 262 of the rules and regulations
for the administration of law and justice in the navy, as au-

thorized or confirmed by sect. 1547 of the Revised Statutes, which provides that "the authority who ordered the court is competent to direct it to reconsider its proceedings and sentence, for the purpose of correcting any mistake which may have been committed." Regulations for the Administration of Law and Justice in the U. S. Navy, 1870, p. 49. Sect. 1547, Rev. Stat., is as follows : " The orders, regulations, and instructions issued by the Secretary of the Navy prior to July 14, 1862, with such alterations as he may since have adopted, with the approval of the President, shall be recognized as the regulations of the navy, subject to alterations adopted in the same manner."

Sect. 5 of the statute of July 14, 1862 (12 Stat. 565), provides " that the orders, regulations, and instructions heretofore issued by the Secretary of the Navy be, and they are hereby, recognized as the regulations of the Navy Department, subject, however, to such alterations as the Secretary of the Navy may adopt, with the approbation of the President of the United States."

The position of the government is not tenable, and for these reasons : —

a. If the regulation of the department had, in precise words, been enacted in a statute, Rear-Admiral Nichols would have had no lawful authority for doing what was done.

He could then have directed the court to reconsider its sentence only for the purpose of correcting a mistake in matter of law or in matter of fact. What he alleged as having happened in the court was neither, being only, in his opinion, an error of judgment within the limits of the discretion conferred by law upon courts-martial.

b. But if it were otherwise, and the regulation of the department be construed as giving him authority to direct the court to reconsider its sentence for any reason that seemed to him sufficient, that regulation would be valid only so far as it conformed to the Constitution and laws. If in any respect it exceeded the limits which they impose, it would not bind even the officers and men of the navy, and with stronger reason it could not be invoked to deprive a citizen of his right to be tried according to the laws of the country.

Art. 54 of sect. 1624, Rev. Stat., specifically limits the authority which the officer convening a court-martial has to revise its proceedings. He may confirm, remit, or mitigate the sentence, but cannot increase it either directly or indirectly, or even transmit it to any one except his superior in office.

c. The sole power of revision was in the admiral himself, and the manner of its exercise was prescribed in that article. When the sentence was signed and transmitted, the power of the court over it ended; and neither by any original action on its own part, nor by delegation from another, could that power be revived.

It is claimed on behalf of the petitioner that when, on the 17th of July, the sentence was made, signed by the several members of the court, recorded, and transmitted to the admiral, not only were the powers of the court exhausted, but the court itself ceased to exist. His action was equivalent to a formal dissolution of the court, and the members who had composed it were thereafter utterly incapable of lawfully doing any act or thing touching or affecting the rights or the liberty of Reed. It follows that on the 22d of July, 1878, when the so-called sentence, whose validity is now under consideration, was pronounced and recorded, a legally constituted court-martial for his trial did not exist. He has therefore been twice put in peril for the same offence, or he is now deprived of his liberty without due process of law. In either case, his imprisonment is contrary to the guaranty contained in art. 5 of the amendments to the Constitution. *Osborn* v. *Nicholson*, 13 Wall. 654, 662.

*The Attorney-General, contra.*

MR. JUSTICE SWAYNE delivered the opinion of the court.

There is no controversy in this case about the facts. The questions we are called on to consider are all questions of law. A brief summary of the facts will therefore be sufficient.

The petitioner, Reed, was the clerk of a paymaster in the navy of the United States. He was duly appointed, and had accepted by a letter, wherein, as required, he bound himself " to be subject to the laws and regulations for the government of

the navy and the discipline of the vessel." His name was placed on the proper muster-roll, and he entered upon the discharge of his duties. While serving in this capacity, charges of malfeasance were preferred against him, and on the 26th of June, 1878, he was directed by Rear-Admiral Nichols to appear and answer before a general court-martial, convened pursuant to the order of that officer on board the United States ship "Essex," then stationed at Rio Janeiro, in Brazil. The court found the petitioner guilty, and sentenced him accordingly. The admiral declined to approve the sentence, and remitted the proceedings back to the court, that the sentence might be revised. The court thereupon pronounced the following sentence in substitution for the former one : —

"That the said Alvin R. Reed, paymaster's clerk, U. S. Navy, be imprisoned in such place as the honorable Secretary of the Navy may designate, for the term of two years ; to lose all pay which may become due him during such confinement, excepting the sum of $10 per month, this loss amounting to $1,960 ; to be fined in the sum of $500, which fine must be paid before or at the end of the term of confinement. Should such fine not be paid at end of the term of confinement, to be detained in confinement without pay until such fine be paid, and at the expiration of the term of confinement to be dishonorably dismissed from the naval service of the United States."

This sentence was different from the preceding one in two particulars, and in both it was more severe. It was approved by the admiral, and ordered to be carried out. The court was subsequently dissolved. While in confinement, under the sentence, on board a naval vessel at Boston, the petitioner sued out a writ of *habeas corpus*, and brought his case before the Circuit Court of the United States for the District of Massachusetts. After a full hearing, that court adjudged against him, and ordered him back into the custody of the naval officer to whom the writ was addressed. The petitioner thereupon made this application in order that the conclusions reached by the Circuit Court may be reviewed by this tribunal.

It is supposed that courts-martial were intended originally to be a partial substitute for the court of chivalry of former times.

3 Christian's Bl. 68, 108 ; Bouv. Law Dict., tit. Courts-martial. The difference between military law and martial law is too well known to require any remark. 1 Kent, Com. (12th ed.) 241, note (*a*).

". . . The common law . . . knew no distinction between citizen and soldier ; so that if a life-guardsman deserted, he could only be sued for a breach of contract ; and if he struck his officer, he was only liable to an indictment or an action of battery." 3 Campbell's Lives of Chief Justices, 91.

The constitutionality of the acts of Congress touching army and navy courts-martial in this country, if there could ever have been a doubt about it, is no longer an open question in this court. Const., art. 1, sect. 8, and amendment 5. In *Dynes* v. *Hoover* (20 How. 65), the subject was fully considered and their validity affirmed.

The regularity of the original organization of the court here in question is not denied.

Three points in support of the petition have been brought to our attention. It is insisted —

1. That the court had no jurisdiction to try a paymaster's clerk.

2. That when the first sentence was pronounced, the power of the court was exhausted, and that the second sentence was, therefore, a nullity.

3. That the court could revise its former sentence only on the ground of mistake, and that there was no mistake, and consequently no power of revision.

The first of these propositions is clearly not maintainable.

Where the punishment is death, or fine and imprisonment, the jurisdiction in question is extended to all persons " in the naval service of the United States" (Rev. Stat., sect. 1624, arts. 4, 14) ; and it embraces, besides the frauds enumerated, " any other fraud against the United States." Id., art. 14.

In case of conviction, adequate punishment is required to be adjudged. Id., art. 51.

Except where the sentence *is* death or the dismissal of a commissioned or warrant officer, it may be executed when confirmed by the officer ordering the court. Id., art. 53.

The place of paymaster's clerk is an important one in the

machinery of the navy. Their appointment must be approved by the commander of the ship. Their acceptance and agreement to submit to the laws and regulations for the government and discipline of the navy must be in writing, and filed in the department. They must take an oath, and bind themselves to serve until discharged. The discharge must be by the appointing power, and approved in the same manner as the appointment. They are required to wear the uniform of the service; they have a fixed rank; they are upon the payroll, and are paid accordingly. They may also become entitled to a pension and to bounty land. Navy Regulations of Aug. 7, 1876, p. 95; *In re Bogart*, 2 Sawyer, 396; *United States* v. *Bogart*, 3 Benedict, 257; Rev. Stat., sects. 4695 and 2426.

The good order and efficiency of the service depend largely upon the faithful performance of their duties.

If these officers are not in the naval service, it may well be asked who are.

The second and third points will be considered together.

The Secretary of the Navy is authorized to establish " Regulations of the Navy," with the approval of the President. 12 Stat. 565; Rev. Stat., sect. 1547. Such " Regulations for the Administration of Law and Justice " were issued on the 15th of April, 1870. Thereby it is declared as follows: —

" The authority who ordered the court is competent to direct it to reconsider its proceedings and sentence for the purpose of correcting any mistake which may have been committed.

" It is not the power of the revising authority to compel a court to change its sentence, where, upon being reconvened by him, they have refused to modify it, nor directly or indirectly to enlarge the measure of punishment imposed by sentence of a court-martial.

" The proceedings must be sent back for revision before the court shall have been dissolved." Reg., c. 5, sects. 262–264.

Such regulations have the force of law. *Gratiot* v. *United States*, 4 How. 80.

The proceedings with respect to the revision of the second sentence were in conformity to these provisions.

It is clear that the court was not dissolved until after the approval of the second sentence by the admiral.

The court had jurisdiction over the person and the case. It is the organism provided by law and clothed with the duty of administering justice in this class of cases. Having had such jurisdiction, its proceedings cannot be collaterally impeached for any mere error or irregularity, if there were such, committed within the sphere of its authority. Its judgments, when approved as required, rest on the same basis, and are surrounded by the same considerations which give conclusiveness to the judgments of other legal tribunals, including as well the lowest as the highest, under like circumstances. The exercise of discretion, within authorized limits, cannot be assigned for error and made the subject of review by an appellate court.

We do not overlook the point that there must be jurisdiction to give the judgment rendered, as well as to hear and determine the cause. If a magistrate having authority to fine for assault and battery should sentence the offender to be imprisoned in the penitentiary, or to suffer the punishment prescribed for homicide, his judgment would be as much a nullity as if the preliminary jurisdiction to hear and determine had not existed. Every act of a court beyond its jurisdiction is void. *Cornett* v. *Williams*, 20 Wall. 226; *Windsor* v. *McVeigh*, 93 U. S. 274; 7 Wait's Actions and Defences, 181. Here there was no defect of jurisdiction as to any thing that was done. Beyond this we need not look into the record. Whatever was done, that the court could do under any circumstances, we must presume was properly done. If error was committed in the rightful exercise of authority, we cannot correct it.

A writ of *habeas corpus* cannot be made to perform the functions of a writ of error. To warrant the discharge of the petitioner, the sentence under which he is held must be, not merely erroneous and voidable, but absolutely void. *Ex parte Kearney*, 7 Wheat. 38; *Ex parte Watkins*, 3 Pet. 193; *Ex parte Milligan*, 4 Wall. 2.

The application of the petitioner is, therefore, denied.