## *In re* ZIMMERMAN.

(*Circuit Court, N. D. California.* February 28, 1887.)

1. ARMY AND NAVY—COURTS-MARTIAL—JURISDICTION—DESERTION.

   The military courts have jurisdiction, to try all military offenses, committed by parties enlisted in the military service of the United States, among which, is, the offense of desertion.

2. SAME—JURISDICTION OF CIVIL AND MILITARY COURTS.

   The civil courts have no authority to review, control, or in any manner interfere with the action of the military tribunals, while, regularly, engaged in the exercise of their appropriate jurisdiction.

3. SAME—STATUTE OF LIMITATIONS.

   The bar of the statute of limitations provided for in the 103d article of war in the case of a party charged with desertion, is a defense, to be set up in the case, which the military court trying the charge, has jurisdiction to determine for itself, without interference from the civil courts.

4. SAME—TWO YEARS' LIMITATION.

   The provisions of the 103d article of war, providing, that, "no person shall be liable to be tried and punished for any offense, which appears to have been committed, more than two years before the issuing of the order for such trial," is applicable to the offense of desertion; and it is the duty of courts-martial as to this offense as well as in all cases within its terms, to give full effect to this provision of the statute.

5. SAME—DESERTION OF MINOR.

   A minor over 18 and under 21 years of age, who enlists in the army of the United States, without the consent of his parent or guardian, can commit the military offense of desertion, and the military tribunals have jurisdiction to try a minor so enlisting upon a charge of desertion.

6. SAME—CIVIL COURTS.

   The civil courts have no jurisdiction to discharge a minor, who enlisted in the army, in violation of section 1117 of the Revised Statutes, who is in custody of the military tribunals, awaiting a trial, ordered to take place before a court-martial, upon a charge of desertion.

*(Syllabus by the Court.)*

On *Habeas Corpus.*

Before SAWYER, circuit judge, and HOFFMAN, district judge.

*Ward McAllister, Jr.*, for petitioner.

*H. B. Burnham*, Dep. Judge Ad. Gen., for respondent.

SAWYER, J. The petitioner, a native of Switzerland, on April 17, 1873, enlisted as a soldier in the United States army, for the term of five years, at Jersey City, New Jersey, declaring at the time, that he was 21 years of age, and taking the usual oath of enlistment found on page 74, par. 76, U. S. Army Regulations of 1881. He was assigned to duty in Company D, Twenty-first United States Infantry. He served as a soldier, one year, one month, and 27 days, receiving the pay, and allowances, provided by law, up to, and including, April 30, 1874. On June 10, 1874, he deserted at Camp Warren, Oregon, taking his gun and equipments with him. On November 12, 1886, he, voluntarily, surrendered, as a deserter, to the commanding officer at the *presidio*, and upon said surrender he presented to the officer an affidavit, in which he stated, that he was born in Switzerland on November 2, 1853, and annexed thereto what purported to be, an official certificate of the proper

officer, showing that fact; that he came to the United States in 1872, enlisted in 1873, and deserted June 10, 1874, at which time he was still a minor; that, at the time of his enlistment, he was unable to speak, and understand the English language; did not realize the importance of the act, and was, fraudulently, enlisted without the consent of his parents, or guardian, he being a minor, having a father under whose control he was, in New York city; that he had led an honest, industrious life, as evidence of which, he presented certificates of his employers for several years; that he was engaged to be married, and wished to establish himself, and in order to avoid any complications in the future, arising from his unsettled obligation to the United States, he surrendered himself, and requested to be discharged. Whereupon, instead of being discharged, he was taken into custody, charges and specifications for desertion were presented against him, and he was ordered by the lieutenant general to be tried upon those charges by a military court. He was in custody, awaiting such trial, when the writ of *habeas corpus*, issued. So far, there is no dispute about the facts.

The petitioner claims, that he was a minor, under the age of 21 years, both when he enlisted, and when he left the service; that he had a father living in New York, under whose control he was, and that he was enlisted without the consent of his father; and, that, his enlistment was therefore, absolutely void, and consequently, there could be no legal offense of desertion. That he enlisted while under age without the consent of his father, is not admitted by the judge advocate, who declares, that he does not know anything about it. From the time of desertion, June 10, 1874, till his surrender, when he was taken into custody, November 12, 1886, was over 12 years. And from the time of the expiration of the term for which he enlisted, April 17, 1878, till he was taken into custody, upon his surrender, and the order for trial, is eight years and about six months, during all which time, except about six months absence in 1881, on a visit to Mexico, and Switzerland, he was within the jurisdiction of the military authorities, and at all times amenable to arrest and trial for desertion.

Upon this point there does not appear to be any dispute. It is not claimed that he was out of the jurisdiction of the military authorities, or that there was any obstruction to his arrest or trial. Under the 103d article of war which provides, that, "no person shall be liable to be tried and punished for any offense, which appears to have been committed more than two years before the issuing of the order for said trial," etc., upon the conceded facts of the case, the petitioner insists, that the military court has no jurisdiction to try him; and that he is, unlawfully, held for that purpose, and, therefore, unlawfully restrained of his liberty.

In *Re Bogart*, 2 Sawy. 397, this court, the circuit and district judges concurring, held, that the military court, had jurisdiction to try military offenses; that a former conviction, and the statute of limitations, were matters of defense, which must be investigated and determined in the exercise of jurisdiction, and not matters upon which the jurisdiction to

hear and determine the charge depends; that these matters, cannot be inquired into on *habeas corpus;* that the civil courts have no jurisdiction to review the action of the military courts, acting within their jurisdiction, and, still less, to anticipate, and intercept the latter in the exercise of their lawful jurisdiction. This question was again examined and the decision affirmed, *In re White,* 9 Sawy. 49, 17 Fed. Rep. 723, Mr. Justice FIELD, and the circuit judge concurring. These decisions were approved, and followed by Mr. Circuit Judge WALLACE, *In re Davison,* 21 Fed. Rep. 618, reversing the district court on that point. The jurisdiction to try offenses committed in the naval or military service, unobstructed by the civil courts, was recognized in *Ex parte Reed,* 100 U. S. 13, and *Bogart's Case* approvingly cited. Id. 22. That the civil courts cannot interfere with courts-martial in the exercise of their legitimate jurisdiction, was held by the supreme court in *Wales* v. *Whitney,* 114 U. S. 564, 570, 5 Sup. Ct. Rep. 1050. And in *Smith* v. *Whitney,* 116 U. S. 177, 6 Sup. Ct. 570, the supreme court says, "this court has repeatedly recognized the general rule, that the acts of a court-martial *within the scope of its jurisdiction, and duty,* cannot be controlled or reviewed in the civil courts by writ of prohibition, *or otherwise,*" and again, with numerous other cases cites, both *In re Bogart,* 2 Sawy. 396, and *In re White,* 9 Sawy. 49, 17 Fed. Rep. 723, thereby recognizing those cases as, properly, laying down, and applying, the law.

But it is earnestly insisted, on behalf of the petitioner, that the military courts, in pursuance of an order of Mr. Cameron, made in 1877, while secretary of war, decline to give effect to the limitation found in the 103d article of war; and unless the civil courts protect the petitioner, and such as are, similarly, situated, they have no protection; and are, arbitrarily, and wrongfully, deprived of personal rights expressly granted and assured by the statutes of the United States. Numerous instances are cited, which, it is alleged show this state of facts. We do not know the precise facts or views upon which the courts-martial acted in the numerous cases cited. But we have no hesitation in saying that in our judgment the 103d article of war applies to the offense of desertion as well as to all other offenses. Desertion is an offense under the statute, punishable by the severest penalties, and the express language of the statute is, that, "*no person, shall be liable to be tried and* punished * * * *for any offense,* which appears to have been committed more than two years before the issuing of the order for such trial." This language is of the largest, and most comprehensive import. There is no exception, express, or that can, reasonably, be implied, of the offense of desertion. There seems absolutely to be no room for construction. To interpolate into the provision an exception of the offense of desertion, is, as it appears to us, clearly, to legislate, not to construe, or interpret. If this offense can be taken out of the statute, so may any, and all others, and the statute be wholly abrogated, and rendered nugatory, by what seems to be a manifestly unjustifiable ruling of the secretary of war, and by courts-martial, if followed by them, acting in deference or subordination, thereto.

A question has arisen, whether desertion is a *continuing* offense, in such sense, that the statute does not begin to run till the expiration of the term of enlistment. A continuing civil, or military, obligation, to serve till the expiration of the term of enlistment, is *one* thing; and a continuing criminal offense, if such there can be, which is perfected, and ripe for charges and trial, at the moment it is "*committed*," for the purpose of barring a trial and punishment under the statute of limitations, is quite another. Some, however, maintain the affirmative of the proposition, notwithstanding the language of the statute is after the offense "*appears to have been committed*."

Although by no means satisfied with that view, yet, for the requirements of this case, conceding, that desertion is a continuing offense, for the purpose of the statutory bar, during the entire term of enlistment, therein differing from a breach in other contracts for a specific term of service, and that the statute does not begin to run although the offense is complete and ripe for trial and punishment at the moment the desertion is complete, or offense committed, till the expiration of such term, still the petitioner was not arrested, and the order for trial was not issued, till more than eight years after the expiration of his term of enlistment. The statute had, therefore, run in his favor several times over, even upon that hypothesis.

We do not ourselves, entertain the slightest doubt that this petitioner, upon the facts *now* appearing, is entitled to the full benefit of this provision of the statute. If we are right on this proposition, then an erroneous ruling of the military authorities which upon the facts as they appear in this case, or in any case, where the deserter has been within the jurisdiction of the military authorities, with no obstacle in the way of arrest, and at all times amenable to arrest and trial for two years, after the offense appears to have been committed, fails to give full effect to the statutory bar no matter how well intentioned, and a judgment in pursuance of such ruling, inflicts a great wrong upon the citizen so situated, tried and punished.

It may well be, that, *inter arma silent leges*. The exigencies of active war, sometimes require even the suspension of the great writ of *habeas corpus*—the bulwark of personal liberty. But in times of profound peace, the military, no more than the civil authorities, can willfully place themselves above the laws, without an unwarrantable usurpation of authority. Military, as well as civil courts, may, unintentionally, err in judgment, upon questions open to doubt. We do not, and we cannot, impute to these military courts, or the secretary of war, a purpose to deliberately, and willfully disobey the law, or refuse to give it full effect. If wrong in their construction, they undoubtedly act in strict accordance with their view of the law, and of their duty.

But, assuming, for the purposes of this case, only, that such wrongs are inflicted, as alleged, deliberately, or otherwise, there is, still, under the decision of the supreme court, and authorities cited, no reviewing, controlling, or correcting power in the civil courts. Congress, in such cases, must afford a remedy, or the wrongs must be endured. We must

therefore, adhere to the rulings upon this point heretofore made. But under our views, had we the jurisdiction to do so, we should not hesitate to give full effect to the bar of the statute by discharging the prisoner, on this ground.

The attention of congress appears to have been attracted to this supposed failure of the military authorities to give effect to the statute of limitations, with respect to the offense of desertion; for, since the other portions of this opinion were written, our attention has been called to the passage of a bill by the senate, amending the 103d article of war, and specifically mentioning by name, the offense of desertion, as included within its purview, thus giving emphasis to the only construction, as it appears to us, that the article, as it now stands, will, reasonably, bear.

But, whether petitioner was in the military service, within the meaning of the law, at the time of the alleged desertion, is a jurisdictional fact, and open to inquiry in the civil courts. If he was not in contemplation of law, in the military service, at the time, then, there could be no offense of desertion; and the military court had no jurisdiction to try him at all.

The military courts are courts of special, limited—not general jurisdiction. While the civil courts cannot interfere with the military courts, when acting within their jurisdiction, it is the province of the former, to confine the latter, strictly, to the exercise of their special jurisdiction. *Smith* v. *Whitney*, 116 U. S. 167, 6 Sup. Ct. Rep. 570. In *Bogart's Case*, 2 Sawy. 396, and in *Ex parte Reed*, 100 U. S. 21, the court inquired into the fact, whether the petitioners were in the naval service, at the time when the alleged offense was committed, and, on finding that they were, held, that the courts were proceeding within their appropriate jurisdiction, and refused on that ground to interfere. In this case, the jurisdiction depends upon the fact, whether petitioner, at the time of his enlistment, and alleged desertion, was under 21 years old, and enlisted without the consent of his father under whose control he was; and if so, whether such enlistment, was void *ab initio* under the statute, in such sense, that he was not a soldier, in the service of the United States. For the purposes of this decision, we shall assume, that the petitioner was under 21 years of age, both at the date of his enlistment, and of his desertion; and that he enlisted without the consent of his father. Upon this assumption, what was his legal *status?*

Section 1 of the act of 1872, under which the enlistment was made, provides: that "*no person* under the age of 21 years *shall be enlisted* or *mustered into the military service* of the United States, *without the written consent* of his parents, or guardian; provided, that, such minor has such parents, or guardians, entitled to his custody and control." 17 St. 117, (section 1117, Rev. St.) And the next section, makes it an offense for any officer to knowingly violate the preceding section, punishable by dismissal from service, or such other punishment as the court-martial shall direct.

Article 47 of the articles of war, provides, that "any soldier who, *having received pay*, or having *duly enlisted* in the service of the United States,

deserts the same, shall * * * suffer * * * in time of peace, any punishment excepting death, which a court-martial shall direct." Rev. St. § 1342. The petitioner enlisted, taking an oath that he was 21 years old, in all respects in due form except that he did not obtain the consent of his father. He actually served, and "*received pay,*" over a year, and then clandestinely abandoned the service, carrying with him his gun, and accoutrements, and he is now held for trial upon charges for such desertion. He was a soldier *de facto,* and "*received pay,*" as such, whether "duly enlisted" or not, and thus he falls within the first alternative provided, which does not seem to require any *due* enlistment, as an element in the offense. A number of authorities are cited from the state courts, and one from a United States district court, in which it is, stated, generally, by the judges, in the course of the decisions, that an enlistment by a minor under the statute, without the consent of his parent, or guardian, is, *void,* and not merely voidable. The strongest instance of the use of such language is, perhaps, that of United States District Judge McCANDLESS in *Turner's Case,* wherein he says: "It is objected, that he is a deserter, and subject to military law. *The return to this writ does not make him a deserter.*" But, he observes, outside of the requirements of the case, that, "there can be no criminal desertion, if the enlistment was illegal. It was a declaration, merely, of an intention not to be bound—a disclaimer of the contract, which, under the act of congress, he had a right to make, in the absence of the consent of his parent, or guardian." He quotes from a prior case the following:

"In the presence of the enemy, or in the enemy's country, even camp-followers would, probably, be amenable to martial law, for, if they were not, the safety of the army might be somewhat jeopardized by their desertion to the enemy. It could only be in that light that a person, unlawfully, enlisted, and held, without authority of law, could be amenable to military punishment." *Turner's Case,* 2 Pittsb. 373, 374.

But the statute, in defining the offense of desertion, says nothing about being in the presence of the enemy. The presence of the enemy is not made by the statute an element in the offense of desertion. Desertion is a statutory offense, and it is difficult to perceive, why, a party under the terms of the statute, should be amenable to trial by military courts, for the offense of desertion, when he deserts in one place, when he would not, by desertion in another. The liability to martial law in the presence of the enemy must arise from other considerations than, and outside of the provisions of this statute. Is a party unlawfully enlisted, amenable to trial by courts-martial for any statutory military offense? If amenable for any other statutory offense, why not for *de facto* desertion? The following additional cases are cited by petitioner to sustain the same view: *Com. v. Locke,* 8 Phila. 225; *In re Carlton,* 7 Cow. 471; *Shoomer's Case,* Car. Law Repos. 55; *Com. v. Harrison,* 11 Mass. 63; *Ex parte Mason,* 1 Murph. 336; *Com. v. Fox,* 7 Pa. St. 336. But in all these cases, including *Turner's,* the application for the writ of *habeas corpus,* was *by parents* to have their minor sons *discharged from military service,* only, not from custody of courts-martial, holding them specially

for trial upon charges for desertion, or other military offenses committed while *de facto* in the military service. And the observations of the judges have reference to the facts of the particular cases before them. In *Fox's Case*, one of the strongest, cited, to maintain the position of the petitioner, COULTER, J., takes care to say:

"*It does not appear*, from the return of the officers, *that the minor is under arrest for the crime of desertion*, and is to be tried by a court-martial. *That might possibly, make some difference. If he was in process of trial, this court would perhaps, not look beyond or behind the proceedings which were to bring him before a military court.*" 7 Pa. St. 340.

Why not, if the court were proceeding to try the party for what could not, possibly, be an offense for which he was amenable, to the military authorities?

Were this like those cited by petitioner, the case of a parent applying to the court for the discharge from further service of his minor son, in active service at the time, who had been enlisted in violation of the provisions of section 1117 of the Revised Statutes, and nothing more, we should not hesitate to make the order for discharge. But this is not the position of the petitioner. He is not in the service, his term of enlistment having long since expired, but he is held in custody for trial upon a charge for a gross military offense, alleged to have been committed when he was *de facto* in actual service. This presents a very different question for solution.

While no case deciding the exact point now presented in favor of the petitioner, is cited, or has come under our notice, there are several cases to the contrary. The exact question arose *In re Davison*, on appeal to the circuit court in the southern district of New York, and was, carefully, and, ably, considered by Circuit Judge WALLACE. He held that a minor, enlisted in the army, without the consent of his parents, or guardian, was amenable to trial by the military courts for the offense of desertion; and the petitioner was, accordingly, remanded. *In Re Davison*, 21 Fed. Rep. 622, 623. The propriety of the distinction, holding an enlistment in violation of the provisions of section 1118 to be absolutely void, while one in contravention of section 1117, is only voidable—the prohibitory language, "no person under the age of $\frac{16}{21}$ years, shall be enlisted or mustered into the military service"—being identical, is not entirely clear to our minds. But the decision is an authority, in point, at least, as to section 1117, and entitled to the highest respect.

So, in the *Case of McConologue*, taken from the military authorities on *habeas corpus*, while under arrest for desertion, Mr. Justice GRAY, now of the United States supreme court in deciding the case said, "A minor's contract of enlistment is indeed *voidable, only, and not void*, and, if, before a writ of *habeas corpus* is sued out *to avoid it*, he is arrested on charges for desertion, he should not be released by the court, while proceedings for his trial by the military authorities are proceeding." Citing as authorities on the point *Dews' Case*, 25 Law Rep. 538; *Tyler* v. *Pomeroy*, 8 Allen, 480, 501; *Com.* v. *Gamble*, 11 Serg. & R. 93, which see. *McConologue's Case*, 107 Mass. 154. So in *Ex parte Anderson*, 16 Iowa, 595,

Mr. Justice DILLON while on the bench of the supreme court of Iowa, held, that, "when the return to a writ of *habeas corpus shows that a prisoner is held* to answer a charge of the military *crime of desertion,* of which the military courts of the United States have exclusive jurisdiction, *the court will not inquire into the validity of his enlistment, but will remand him for trial by the court which has jurisdiction of the offense.*" This is, also, directly, in point. See, also, *In re Wall,* to the same effect, 8 Fed. Rep. 85.

Whatever doubts we might entertain, were the point presented for decision for the first time, upon these authorities, all of which present the precise point for decision, being one way, we hold, that the court-martial has jurisdiction to try the case; that the demurrer to the return must be overruled, the writ discharged, and the prisoner remanded.

As suggested by Mr. Circuit Judge LOWELL in *Wall's Case, supra,* should it appear, that a minor unlawfully enlisted without the consent of his father, after such enlistment, notified his commander, that he repudiated his contract of enlistment, as illegal, declined to be further bound by it, returned his gun and equipments, and then openly left, avowing his leaving to be in consequence of the repudiation of his contract, as illegal, we are not prepared to say, that he would not be entitled to his discharge, even if, afterwards, arrested, and held for trial on a charge of desertion based upon these acts. But it will be time enough to decide that point when the question arises.

Upon the view we take, the fact, that the petitioner, when he enlisted, and when he deserted, was a minor; that he was living with, and under the control of his father, and enlisted without his consent, are immaterial, to the decision, and, we, therefore, for that reason, decline to retain the case for proofs of those facts. If on appeal, the supreme court should be of opinion, that we are wrong, on this proposition, it will, of course, reverse our judgment, and remand the case with instruction to permit the taking of proofs upon those points. As there is now an appeal to the supreme court from judgments in *habeas corpus* cases, where a party is alleged to be held in violation of the laws of the United States, it is hoped, that this case will be appealed, and, that an authoritative decision may be had upon all the vexed questions noticed in this decision.

Let the demurrer to the return be overruled, the application to present the proofs indicated, denied, the writ discharged, and the prisoner remanded to the custody of respondent.