Nott, Ch. J.,
delivered the opinion of the court:
The confused condition of our statute law relating to the officers, warrant officers, petty officers, and seamen of the Navy may be best illustrated by the fact that a paymaster’s clerk was held to be an officer and was held not to be an officer by the same court, on the same day, and through the same judge. (United States v. Mouat, 124 U. S., 303; United States v. Hendee, ib., 309.) These decisions, of course, meant that a paymaster’s clerk was and was not an officer within the intent of certain statutes. The one decision related to mileage, the other to longevity pay. As to the former, it was held that a paymaster’s clerk is not an officer within the intent of a statute allowing mileage to officers in the Navy; as to the latter, that he is an officer within the intent of the Act March 3, 1883 (22 Stat. L., 473), which provides that “ all officers of the Navy shall be credited with the actual time they may have served as officers or enlisted men in the Regular or Volunteer Army or Navy, or both, and shall receive all the benefits of such actual service in all respects in the same manner as if all said service had been continuous and in the Regular Navy in the lowest grade having graduated pay held by such officers since last entering the service.”
The case now before us rests upon the same statute, and the question plainly stated is whether “ a civil engineer in the Navy” was as much an officer in the Navy as a paymaster’s clerk — whether this case comes within the decision of the Supreme Court in United States v. Hendee.
So far as the authority and character of the appointing power are involved in the question, civil engineers in the Navy, prior to the Act 2d March, 1867 (Rev. Stat., § 1413), were much more officers than paymasters’ clerks. The head of an Executive Department, the Secretary of the Navy, formally appointed them; but a paymaster’s clerk was appointed *386 by a paymaster with, the approval of the commanding officer of the vessel. Both were employed by virtue of general appropriation acts; both were recognized and their duties defined more or less by the regulations of the Navy; the pay and tenure of office of neither were fixed by law.
As regards their being in the naval service, the case of the civil engineer is not so strong. On the one hand, the duties and responsibilities of a civil engineer in the Navy are and always have been much greater than those of a paymaster’s clerk. He was required to “make such suggestions to the commandant of the yard, in the line of his profession or duty, as he may consider advantageous to the interest of the service;” he had the “ superintendence and charge of the erection and repairs of all buildings in the yard;” he had the “superintendence and direction of the architect when one was employed;” he was held “ responsible for the proper distribution and employment of all materials;” he was required to keep “ an account of all materials and labor,” and report to the commandant of the yard. (Navy Regulations, 1865, § 15.) On the other hand, a paymaster’s clerk was required to submit to the laws and regulations for the government and discipline of the Navy; his acceptance and agreement to submit to such laws and regulations had to be given in writing and filed in the Department; he must take an oath and bind himself to serve until discharged; his discharge .must be by the appointing power, and approved in the same manner as his appointment; he was required to wear the uniform of the service; he had a fixed rank; he was upon the pay roll, and paid accordingly. (Ex parte Reed, 100 U. S., 13.) We are not aware that any of these indicia of naval as distinguished from civil service appeared in the duties and employment and official life of a civil engineer prior to the act of 1867.
But in the magnitude of the civil war the importance of the civil engineers in the Navy had grown with the growth of the Navy, and accordingly the Act 2d March, 1867 (14 Stat. L., 490; Rev. Stat., § 1413), enacted “that civil engineers and naval storekeepers, when required at any of the navy-yards, shall be appointed by the President, by and with the advice and consent of the Senate.” This fixed the status of civil engineers as officers. But the provision was a proviso to an appropriation act, and it was coupled immediately with the *387 further provision, “ and the persons employed at the several navy-yards as master machinists, master carpenters, master joiners, master blacksmiths, master boiler makers, master sail-makers, master plumbers, and master painters, and master caulkers, shall be men skilled in their several duties and appointed from civil life.”
This statute manifestly left it questionable whether a civil engineer was an officer in the civil or the naval service— whether he was an officer in the Navy Department or in the Navy; that is to say, the statute left it uncertain whether an officer always employed on shore duty and in one of the occupations of civil life, the erection and superintendence of buildings, whose prescribed duties, indeed, precluded his ever rendering service on board of a ship, and who had no relative .rank assigned to him, could be deemed an officer in the Navy.
But the statute fixing “ the annual pay of the officers of the Navy on the active list,” the Act 15th July, 1870 (16 Stat. L., 321, 330, § 3), classed civil engineers with other naval officers — with admirals, commodores, captains, etc. It assigned to them three kinds of pay which belong to the naval and are unknown to the civil service, “duty” pay, “leave or waiting orders” pay, and “longevity” pay. The statute reorganizing the Navy, the Act 3d, March, 1871 (16 Stat. L., 526, 536), completed the enactments necessary for the determination of a civil engineer’s actual standing in the Navy by providing “ that the President of the United States is hereby authorized, in his discretion, to determine and fix the relative rank of civil engineers.”
These acts of Congress do not seem to the court to have been passed with the intention of changing the law — that is to say, of altering the legal status of civil engineers in the Navy — but rather to define and make certain their position in the Navy. In other words, the purpose of the statutes was not to transfer them from the civil service to the naval service, but to elevate and dignify the position in the naval service. In the opinion of the court these statutory provisions amount to a legislative recognition of civil engineers as officials who were and always had been in the Navy.
The executive branch of the Government has in like manner, interpreted the law and classified the service. In regulations “ established and published for the government of all persons *388 attached, to the United States naval service” (Navy Regulations, 1865), civil engineers were enumerated and their duties rigorously defined, and they were thus classified by the Secretary of the Navy: “A rigid observance of these Regulations is required from all persons belonging to the Navy of the United States, and it is furthermore made their positive duty to report forthwith to the Secretary of the Navy any negligence, disobedience, or infraction thereof which may come to their knowledge.” After the act 15th July, 1870, they were uniformly credited with longevity pay for service rendered prior to the act 2d March, 1867, until the present controversy began. Both the Navy Department and the accounting officers of the Treasury consequently have agreed that whatever civil engineers were officially as appointees of the Secretary of the Navy, they at least belonged to the Navy. So far as the rulings of the accounting officers appear in the records of the Treasury Department now before the court, the rejection of the claimant’s application was the first decision that a civil engineer did not belong to the Navy.
The status of such an officer, the department or place to which he properly belongs, is something which can be much better determined by the legislative and executive branches of the Government than by the judicial. In view of the fact that the legislative and executive have uniformly given the same construction to the laws and the same classification to the service of the officer, we do not feel at liberty to hold otherwise.
The judgment of the court is that the claimant recover $13,879.56.