Points decided.

[No. 1518.]

IN RE ESTATE OF M. D. FOLEY, DECEASED, MRS. OSCAR
J. SMITH, APPELLANT, *v.* JOHN D. FOLEY, JERE-
MIAH D. FOLEY, EDMUND D. FOLEY, ANNA D.
FOLEY AND JOHANNA FOLEY, RESPONDENTS.

PRACTICE—JURISDICTION—PROBATE PROCEDURE—JUDGMENT. District courts,
though now vested with jurisdiction of probate matters are governed
by the rules of practice that formerly applied to the probate court
and the rules prescribed by the probate act, and must be governed
by the provisions of said act as to the character and extent of the
judgment or decree.

IDEM—DISTRIBUTION OF ESTATES. The legislature has declared (Gen. Stats.
2919, 2927), when, on whose application, and to whom distribution
may be made, in proceedings for partial and final distribution,
respectively. The courts are authorized to act in pursuance of these
statutory provisions, and not otherwise in the distribution of estates.

IDEM. Under Gen. Stats. 2919, 2921, 2922, which provides that any heir,
devisee or legatee may present his petition to have the legacy or
share of the estate to which he is entitled given to him, which
application may be resisted by any persons interested, or that any
other heir, devisee or legatee may make a similar application for
himself, and if the share of the applicant may be allowed, without
injury to creditors, the court shall make a decree in conformity with
the petition: *Held*, that in a proceeding for partial distribution on
petition of the decedent's widow, the court cannot distribute any
part of the property of the estate to parties claiming title thereto as
grantees of the petitioner under an agreement with her, and not as
heirs, legatees or devisees of the decedent.

IDEM. In proceedings for partial distribution under the sections of the
statutes, *supra*, none other than an heir, devisee or legatee, having
an interest, as such, in the property for which distribution is asked,
is authorized to petition for such distribution, and the court is not
authorized to make such distribution to any claimant other than
one entitled to the property as an heir, devisee or legatee.

IDEM—EFFECT OF PRIVATE AGREEMENT. In a proceeding for partial dis-
tribution of a decedent's estate, the question is not properly before
the court to determine whether all the property, or only the separate
property of the decedent, was embraced in an agreement between
the widow and the other heirs for a distribution of the estate.

ESTATES OF DECEASED PERSONS—DESCENTS AND DISTRIBUTION. Under Gen.
Stats. 2981, which provides: "When any person having title to any
estate not otherwise limited by marriage contract shall die intestate
as to such estate, it shall descend and be distributed, subject to the
payment of his or her debts, in the following manner: * * *
*Third*—If there be no issue, nor husband, nor wife, nor father, then
in equal shares to the brothers and sisters of the intestate: * * *
*provided*, that if he or she shall leave a mother, also, she shall take
an equal share with the brothers and sisters": *Held*, that one-half
of the property shall descend and be distributed, subject to the pay-
ment of the debts, to the surviving husband or wife, and the other
half to the intestate's brothers and sisters and to the children of any

deceased brother or sister by right of representation, provided, if the intestate shall also leave a mother, she shall share equally with the brothers and sisters.

### On Rehearing.

Idem.—Distribution of Community and Separate Property. Where, under the stipulations of the parties to this proceeding, the petitions present a case for the partial distribution of separate property to the appellant and the respondents as heirs with respect to that property, and a case for partial distribution of community property to the appellant as the widow of the deceased, and to the respondents as grantees of the appellant, the court has no authority under the statute to distribute any portion of the community property to the respondents.

Appeal from the District Court of the State of Nevada, Washoe county; C. E. Mack, District Judge:

Administration of the estate of M. D. Foley, deceased. Petition of Mrs. Oscar J. Smith, former widow, for a partial distribution. John D. Foley and others, brothers, sister and mother of decedent, answered and prayed for distribution as grantees of the widow. From a decree of distribution, the petitioner appeals. Reversed.

The facts sufficiently appear in the opinion.

W. E. F. Deal, R. M. Clarke, and C. A. Jones, for Appellant:

I. The jurisdiction of the district court in matters of probate is special and limited. The court has no power except such as is expressly conferred by the probate act. (Constitution of Nevada, art. VI, sec. 6; Lucich v. Medin, 3 Nev. 93, 99, 100; 10 Or. 301; Smith v. Westerfield, 88 Cal. 374, 378, 379; 70 Cal. 350; 75 Cal. 512; Probate Laws & Pr., sec. 1; 1 Am. Law of Administration, sec. 11, p. 11; sec. 142; Douglass v. Folsom, 21 Nev. 441, 447; In re Hass, 97 Cal. 232; Buckley v. Superior Court, 102 Cal. 6.)

II. "Unless a warrant for the exercise of jurisdiction in a particular case can be found in the statute, given either expressly or by implication, the whole proceeding is void." (Pelham v. Murray, 64 Tex. 477; Russell v. Lewis, 3 Or. 380; Snyder's Appeal, 36 Pa. St. 166; Briggs v. Cragg, 89 N. Y. 470, 489; Matter of Randall, 126 N. Y. 193; 152 N. Y. 519; Buckley v. Superior Court, 102 Cal. 6; In re Hass, 97 Cal. 232.)

III. "Since the functions of probate courts are limited in

respect to executors and administrators to the control of the devolution of property upon the death of its owner, it is not their province to ajudicate upon collateral questions." The right or title of grantees, heirs, legatees, devisees or distributees to an estate must, if an adjudication become necessary, be tried in courts of general jurisdiction. Probate courts have no power to investigate the validity of an assignment of an interest of an heir or legatee; the decree in distribution should be to the successors of the property, leaving questions of distributive rights to be ajudicated in the ordinary courts. (1 Am. Law of Administration, sec. 151; 57 Cal. 447, 459; 29 N. H. 572; *In re Hass*, 97 Cal. 232; *Buckley* v. *Superior Court*, 102 Cal, 6; 41 N. H. 501; 34 Miss. 289, 291; 38 Miss. 104; 46 Me. 489; 29 Conn. 418; 13 Or. 344; 88 Cal. 374; *Chever et al.* v. *Ching Hong Poy et al.*, 82 Cal. 68, 71, 72; 22 Pac. Rep. 1018; *Pond et al.* v. *Pond et al.*, 13 Mass. 412, *vide* 417; *Shure* v. *Fletcher*, 69 N. W. R. 239; *Buckley* v. *Imp. Co.*, 102 Cal. 6; 41 Am. State, 135, notes, p. 143; 22 Am. Stat. 154; *In re Randall's Estate*, 46 N. E. 945, 947, 948; *Stillwell* v. *Carpenter*, 59 N. H. 414; *Hewett's Appeal*, 53 Conn. 24, 37; 1 Dem. 136; *Perry* v. *Drury*, 56 Iowa, 60.)

IV.   The probate court, upon a petition for partial distribution, has no power to construe a written agreement, the interpretation of which is contested by the parties. It cannot annul the agreement for fraud. It cannot set it aside for mistake or want of consideration. It cannot reform it for any defect whatever. It has no power to enforce its decree in any of the respects before mentioned. For similar reasons it has no power to decree the specific performance of a contract, or hear evidence to determine what the parties intended where ambiguity exists. The court, sitting in probate, has no jurisdiction to distribute the estate, contrary to the provisions of the statute, under a contract, the meaning of which is disputed and controverted by the parties.

V.   " By distribution is understood the division of an intestate's estate according to law." (Bouvier's Law Dictionary, 438.) " Distribution has been defined to be the division of an intestate's estate according to law." (*Rodgers* v. *Gillet*, 56 Iowa, 268; Anderson's Law Dictionary; *Grattan* v. *Grattan*, 18 Ill. 167; 65 Am. Dec. 726.)

VI.  The community property is not "subject to distribution," and is not within the terms of the agreement of September 17, 1894.  (Gen. Stats. 509; Ballinger on Community Property, 230, 231, 232; 56 Iowa, 267; 58 Miss. 692; *Beard* v. *Lofton*, 102 Ind. 408; Pacific Reporter, April 22, 1897.)

VII.  Under Gen. Stats. 509, by its express and unambiguous words, *all the community property "belongs" to the petitioner*, and respondents have no interest in it whatever, unless the agreement of September 17, 1894, takes petitioner's interest out of her, and vests such interest in the respondents. The one-half of the community property of which said M. D. Foley and said Minnie D. Foley were possessed at the time of M. D. Foley's death is no part of the estate of M. D. Foley, deceased, but belongs to Minnie D. Foley in her own right, and as tenant in common with said M. D. Foley, by virtue of the marriage relation, and because it was acquired by their joint effort.  (Gen. Stats. 509; Ballinger on Community Property, 74, 222, 230, 231, 232.)

*Thomas Wren*, also for Appellant:

VIII.  In probate proceedings. the district courts have no jurisdiction except that specially conferred by statute.  No one not an *heir, devisee or legatee* can make an application under the statute for a partial distribution of an estate. (*Lucich* v. *Medin*, 3 Nev. 99; *Folsom* v. *Douglass*, 21 Nev. 447; Gen. Stats. 2919.)

IX.  It is only upon the final settlement of the accounts of executors or administrators, or subsequent thereto, that the grantee of an heir, devisee or legatee, or the executor or administrator, are authorized to apply for the distribution of an estate.  (Gen. Stats. 2927.)  Upon the application of an heir, devisee or legatee for the partial distribution of an estate, the executor or administrator, or any person interested in the estate, may appear and resist the application, or any other heir, devisee or legatee may make similar application.  (Gen. Stats. 2921.)  Upon an application for final distribution, no such provision as the one last above cited is made or required.  If at the hearing for a partial distribution, if the estate is found to be little indebted, and that the share of the *applicant* may be allowed to him or her

without injury to the creditors of the estate, the court may make a decree in conformity with the prayer of the applicant or applicants. (Gen. Stats. 2922.) The decree may order the executor or administrator to deliver to the *heir*, *devisee* or *legatee* the whole of the estate to which he may be entitled or only to a portion thereof. (Gen. Stats. 2923.) The court, upon a final distribution, is authorized and directed to name the persons entitled to the estate and the proportions or parts to which each shall be entitled, and such persons may demand and recover their share. (Gen. Stats. 2928.)

X. It only requires a cursory examination of the sections of the act cited to see that those in relation to a partial distribution are only intended for the benefit of heirs, devisees and legatees, and only to a limited extent for their benefit. In order to make the proper decree, the court must determine, first, who are the heirs, devisees or legatees; second, whether any share of the estate can be distributed without injury to the creditors of the estate; evidently it is the intention of the statute to give the court a large discretion in determining whether any portion of the estate should be distributed or not. In exercising this discretion, the court should use great caution, and no doubt would be justified, and it would be the duty of the court, to refuse to distribute any portion of the property of an estate, the title to which was in dispute, until final distribution.

XI. It is clear, from the sections of the statute cited in reference to partial distribution, that the court had no jurisdiction to decree a partial distribution to any one not an heir, devisee or legatee, and only to such heir, devisee or legatee, upon application therefor. The respondents opposed a partial distribution to the appellant, and did not ask for a partial distribution to themselves, nor any distribution until the *debts were paid*. The court, therefore, had no statutory authority to make a decree distributing any portion of the estate to the respondents. (Gen. Stats. 2919, 2921.)

XII. Section 2981, General Statutes of Nevada, provides: Clause "Second—If he or she shall leave no issue, the estate shall go in equal shares to the surviving husband or wife, and to the intestate's father." The phraseology of clause

second, section 2981, it will be seen differs entirely from the preceeding and succeeding clauses. Clause first reads: "If there be a surviving husband or wife and only one child," etc. Clause second reads: "If he or she shall leave no issue," etc. The difference of the phraseology is so obvious that it is unnecessary to further point it out, and the different construction to be placed upon the language is equally plain. At the time of the death of the decedent his father was also dead, but is the inheritance of the wife, provided for by the clause cited, on that account to be defeated? Or, is the court to carry out the manifest intention of the legislature to give the surviving wife one-half of the separate property where the husband dies without issue? The policy adopted and prevailing in this state—a policy that has been growing and strengthening for years—is not only to give the wife, where the husband dies without issue, the larger part of the estate, but this policy has finally culminated in a law under this state of facts, giving the surviving wife the entire estate.

*R. R. Bigelow, Geo. W. Baker* and *T. V. Julien,* for Respondents:

I. Upon the petition, the court had jurisdiction to distribute the estate and to decide all questions necessary to be decided to enable it to make such distribution. When the applications were made the probate act of 1861 was in force, so, as to this question, we must be guided by its provisions. Gen. Stats. 2919, provides that any legatee or devisee may ask that his share of the estate be given to him upon his giving bonds. Mrs. Smith presented such a petition, and due notices were given as required by section 2920. Section 2921 provides: "The executor or administrator, or any person interested in the estate, may appear and resist the application, or any other heir, devisee or legatee may make a similar application for himself." Under these sections, whether the district court, when sitting in probate, be regarded as a court of general or limited jurisdiction, it is entirely clear that the court did have jurisdiction to deal with the whole of this estate, and to order distribution, at least of some parts of it.

II. Mrs. Smith was asking to have probably four-fifths

of the estate distributed to herself. She based her right to it upon two propositions: First, that a large portion of it was community property, which belongs to her as surviving wife, and, secondly, that under the agreement of September 17, 1894, which was set up, she was entitled to one-half of the separate property. When such application is made, section 2921 provides, as above stated, that "any person interested in the estate may appear and resist the application, or any other heir, devisee or legatee may make a similar application for himself." Beyond the question, the eastern heirs were "persons interested in the estate." They were interested in it as heirs, and, secondly, under their agreement with Mrs. Smith.

III. In both characters they had the right to resist her application, for she was asking for the distribution to her of portions of the estate belonging to them both as heirs and under the agreement. Had they failed to do so, at least a portion of the property claimed by them would have been distributed to her. When the statute says that any person interested may appear and resist the application for distribution, it means, of course, not merely that they may make an idle resistance, but that their resistance shall prevent the distribution to the applicant of the property in which they are so interested. Then, in addition, as heirs, the statute especially authorizes them to ask for distribution to themselves.

IV. They did both. They resisted her application, and they asked for distribution to themselves. That they had a right to do this under the statute is, it seems to me, absolutely clear. But, notwithstanding it must be admitted that the court did have jurisdiction of this contract to the extent at least of preventing Mrs. Smith from getting the portion of the estate belonging to the others as heirs and under the contract, it is claimed that it had no right to go further and distribute to them the portion of the property so found to belong to them. That is, the court could pass on the whole question—it might and must determine whether that contract gave them any right in the portion of the estate which Mrs. Smith was asking to have distributed to her—but after trying this question for days and weeks and deciding it, as it

must, it could not take the next step and distribute it to the rightful owners. Such a view is not one to be commended on account of its broadness. It looks very much like what we now call sticking in the bark and what my Lord Coke would have called an adherence to the letter which killeth the spirit of the instrument.

V. The district court in probate matters, the same as in actions at law or in equity, is a court of general jurisdiction. But the whole argument against the jurisdiction of the court is based upon the theory that as to probate matters our district court is a court of limited and special jurisdiction. Section 6 of article VI of the Constitution of Nevada, conferring jurisdiction upon the district courts, provides that " the district courts in the several judicial districts of this state shall have original jurisdiction in all cases * * * relating to the estates of deceased persons." By this provision the court is vested with the same jurisdiction over the estates of deceased persons that it has over any other kind of a case— the same jurisdiction that it has over cases at law or in equity. This jurisdiction comes from the constitution, and not from the statutes. While its exercise may be regulated by statutes, no statute is needed to confer it, nor can it be limited by statutes. If, as to probate matters, our district court is one of limited and inferior jurisdiction, then it is a court of limited and inferior jurisdiction as to common law matters and actions in equity, for jurisdiction as to all of them is conferred in the same manner and by the same language.

VI. Whenever, without words of limitation, probate jurisdiction is conferred upon a court of general jurisdiction, the court has jurisdiction over such matters, and over every part thereof, as fully as it has over any other action or proceeding. The distinction between the jurisdiction now exercised by the district court in probate matters, and that formerly exercised by probate courts as such, is quite clearly stated in *Burris* v. *Kennedy*, 108 Cal. 331, 41 Pac. 458. *In re Burton*, 93 Cal. 459, 29 Pac. Rep. 36, also covers the same proposition; also, *Pennie* v. *Ranch*, 94 Cal. 521. The same question rose in *Brooks* v. *Chapelle*, 34 Wis. 405–411.

VII. *In re Painter's Estate*, 115 Cal. 635, 47 Pac. Rep. 700,

the question of the construction of the statutes providing for partial distribution came before the court of that state. Section 1658, Code of C. P. of California, is substantially the same as General Statutes of Nevada, section 2919. But in 1889 (California Statutes of 1889, p. 92), a section was added (Civil Code, sec. 1663), which, with some exceptions immaterial here, is substantially the same as section 1658, C. C. P. of California, and consequently substantially the same as the Nevada statutes. In the case cited (*In re Painter's Estate*), the construction of this section came before this court upon an application by a widow, asking to have what she claimed to be community property distributed to her. The court refused the petition, and she appealed. In the course of the opinion, the court considered what questions can be raised upon such an application, and, as we claim, fully sustained the course pursued in the Foley case. See, also, *In re Grider's Estate*, 81 Cal. 571.

VIII. Where jurisdiction is conferred over any subject matter and it becomes necessary in the adjudication thereof to decide collateral matters over which no jurisdiction has been conferred, the court must of necessity decide such collateral matters. (Wells, Juris. p. 283; Rice, Probate Law, p. 15; Woerner's Law of Administration, sec. 142.)

IX. This principle completely covers the question now being considered. Upon this application for partial distribution all the parties interested in the estate were before the court. All the property belonged to them, and the court had power and was called upon to distribute it to them. The only question was: In what proportion? Even admitting that the court could not, as an original question, have determined the right of a grantee of an heir, when it came up collaterally, and must be decided in order to exercise the power that the court undoubtedly had of distributing the property, then the court had power, under the strictest rule, to decide the question. (Rice, Probate Law, p. 15, Wells, Juris. secs. 272, 273, and cases cited.)

X. There is nothing in the Nevada decisions intimating a narrower view of the power of the district courts in probate matters than that for which we contend here. *Lucich* v. *Medin*, 3 Nev. 93, and *Douglass* v. *Folsom*, 21 Nev. 441, are

not at all in point. It was there said that the distinction between the different kinds of jurisdiction that exist in the district courts should not be confounded, but nowhere was there a suggestion that the jurisdiction in any case was not sufficient to enable the court to fully decide any case that might arise, whether at law, in equity or in probate. There was no suggestion that, as to either, the court was one of limited or special jurisdiction, and under our constitution the contrary is too clear for argument. On .the other hand, the old probate court was one of limited jurisdiction, and the difference that flows from this distinction is one of the exceptions spoken of in *Douglass* v. *Folsom* (see p. 447), immaterial there, but of controlling force here.

XI. Under section 2921, General Statutes, the interests of a grantee are protected under the designation of " any person interested in the estate," expressly in section 2927, where it is provided that distribution may be made to a grantee upon final distribution, and by section 2933 on partition. They are not, therefore, strangers to the proceedings in this state, and the reason of the rule stated in *Harrington* v. *La Loque*, 13 Or. 344, and similar cases, fails.

.XII. ˙In most states where it has been decided that probate courts have no jurisdiction over the claims of purchasers from the heirs, the court is one of limited and special jurisdiction. It has no equity powers, no jury, and no methods of procedure for the determination of such questions. The distinction between such a court and one like ours is aptly pointed.out in the citation from American Law of Administration, sec. 142, found on page 26 of appellant's brief. It is there said that the courts of which the authority is special take all their powers from the statutes regulating them, and that they have only such powers as are directly conferred upon them by the statute. As we have seen, this is not the case with our court; but it derives its powers from the constitution, and these powers cannot even be limited by the legislature. The tendency of courts is to take broader views of the jurisdiction of probate courts, and to do away with the narrow technicality of the older decisions. (Works on Jurisdiction, p. 450, Brown on Juris. p. 342; Rice, Probate Law, pp. 8, 10, 12, 19.)

By the Court, Bonnifield, J.:

On the 26th day of July, 1894, M. D. Foley died intestate and without issue, seized and possessed of an estate, real and personal, situated in Washoe and Eureka counties, State of Nevada, and leaving as his heirs at law, Minnie D. Foley, his wife, John D. Foley, Jeremiah D. Foley, Edmund D. Foley, his brothers, Anna D. Foley, his sister, and Johanna Foley, his mother.

On the 20th day of August, 1894, Minnie D. Foley was duly appointed administratrix of said estate and as such entered upon the duties of her office and continued therein until she intermarried with Oscar J. Smith, when on the 16th day of May, 1896, W. E. Griffin was appointed administrator of said estate.

The inventory and appraisement of the property of the estate situated in Washoe county was filed August 12, 1894, and did not disclose the character of said property, whether it was community or separate property. The property was appraised at the value of $157,819.

On the 17th day of September, 1894, the appellant and respondents entered into a written agreement of which the following is a copy, to wit:

"This agreement, made and entered into this 17th day of September, 1894, by and between Jeremiah Foley, son of Mrs. Johanna Foley, and brother of M. D. Foley, deceased, and John D. Foley, son of Mrs. Johanna Foley, and brother of M. D. Foley, deceased, and Edmund D. Foley, son of Mrs. Johanna Foley, and brother of M. D. Foley, deceased, and Anna D. Foley, daughter of Mrs. Johanna Foley, and sister of M. D. Foley, deceased, and Johanna Foley, mother of M. D. Foley, deceased, and Minnie D. Foley, surviving wife of M. D. Foley, deceased (all of whom are heirs at law of said M. D. Foley, deceased, who died intestate at Reno, Nevada, on July 26, 1894, and whose estate is now being administered upon by the District Court of the State of Nevada, Washoe county), witnesseth that said parties hereto, in consideration of the sum of one dollar to each in hand paid by the other, do hereby covenant and agree, each with the other, that all the estate of said M. D. Foley, deceased, subject to the distribution by said district court, or by any other court, in any

other state or territory, may and shall be distributed as follows: One-half thereof to Minnie D. Foley, surviving wife of M. D. Foley, deceased, and the other half thereof to be divided and distributed to Johanna Foley, mother of said deceased, Jeremiah Foley, brother of said deceased, John D. Foley, brother of said deceased, Edmund D. Foley, brother of said deceased, and Anna D. Foley, sister of said deceased, share and share alike. In witness whereof." * * *

On July 12, 1895, the appellant, then Minnie D. Foley, filed her petition praying for a partial distribution of said estate, one-half to her and one-half to the respondents, as the heirs at law of said deceased, making no mention of the character of the property, whether community or separate property, or both. The court set the hearing of this petition for the 23d day of September, 1895, but no hearing was ever had thereon. On December 31, 1896, the appellant filed what was designated and treated as an "amended petition for partial distribution" of said estate, showing that since the filing of her original petition, she had intermarried with Oscar J. Smith.

The amended petition contains a list and description of what the petitioner claimed was community property, and it is alleged that all of said property belongs to the petitioner as the surviving wife of said M. D. Foley, deceased, and it contains a list and description of what she claimed was the separate property of the deceased, and it is alleged that the petitioner and said other heirs "have, by an agreement in writing, agreed that the said estate subject to distribution, to wit: the separate property, shall be divided as follows, one-half thereof to your petitioner, and one-half" to the respondents, and petitioner prayed that the community property be set apart and delivered to her, and that the separate property be partially distributed among the heirs of said deceased, one-half to the petitioner and one-half to the respondents. To this petition is annexed the said agreement of date 17th day of September, 1894, and made part thereof. The respondents by their answer deny that any portion of said estate was or is community property and allege that the whole thereof was the separate property of the said M. D. Foley, deceased; deny "that as surviving wife said Mrs.

Oscar J. Smith, the petitioner, is entitled to all of the community property of which said M. D. Foley died seized or possessed, or of any of the property, either community or separate property, owned by the said deceased at the time of his death, save and except the one-half of said property, whether same be community or separate, and in this behalf allege that heretofore, to wit: on the 17th day of September, 1894, and within sixty days after the death of said M. D. Foley, and after letters of administration upon the estate of M. D. Foley, deceased, had been duly issued out of this court to said Minnie D. Foley, now Mrs. Oscar J. Smith, the said petitioner herein, and these respondents entered into a written agreement with reference to the distribution of the estate of said M. D. Foley, deceased, which agreement is in words and figures following, to wit ": The said agreement of 17th day of September, 1894, is set out in the answer.

They likewise allege that, at the time of the execution of said agreement, the said estate, and the whole thereof, was being administered upon in said district court; that the whole thereof was then, ever since has been, and still is the subject of distribution by order of the court; that said agreement was made and executed by the parties thereto for the purpose of settling any question of dispute that might arise between them as to the character of the property of the deceased, and for the purpose of saving the expense of any litigation growing out of an examination as to the character of said property, whether community or separate, and they pray that the whole of said estate, whether community or separate property, be distributed, after the payment of the debts, one-half thereof to Mrs. Oscar J. Smith, as the surviving wife of M. D. Foley, deceased, and the other half to the respondents, in accordance with the said agreement.

On the 9th day of February, 1897, upon consent and agreement of the parties hereto duly given and made in open court, an undivided one-half of said estate was by order, judgment and decree of the court distributed to the petitioner, Mrs. Oscar J. Smith, as the surviving wife and heir of said deceased. The question as to the character of the property of the estate, whether community or separate property, and all questions concerning the rights of the respective

parties to the other half of the estate, were reserved by the court for future hearing, consideration and determination.

On the 2d day of July, 1897, the matters with respect to said questions and the rights of said parties, reserved as aforesaid, came on to be heard. It was stipulated and agreed by the counsel of the respective parties, in open court, that the character of the property was as claimed to be and described in the petition of Mrs. Oscar J. Smith, except one hundred shares of the Spring Valley water stock, and that that was of the separate property.

It appears that the value of the community property greatly exceeds the value of the separate property. A jury was empaneled, and special issues framed and submitted to them for their answer, with respect to said agreement. The jury returned their answer to the several questions submitted to them, which the court ratified, confirmed and adopted as its findings on the questions submitted, and the court found said agreement to be a full and complete settlement of all the property rights of said parties in said estate, in the proportion of one-half to the petitioner, Mrs. Oscar J. Smith, and the other half in equal shares to said respondents, and ordered, adjudged and decreed, that an undivided one-half of all the property of said estate, describing it, and including the community as well as the separate property, real and personal, "be, and the same is, hereby distributed, to said Johanna Foley, John D. Foley, Jeremiah D. Foley, Edmund Foley and Anna Foley, share and share alike, upon the execution of a bond by them," etc., "for the payment to W. E. Griffin, administrator," etc., "of their proportion of the debts of said estate whenever required so to do, and of their proportion of the expenses of the administration of said estate."

From this decree Mrs. Oscar J. Smith, the surviving wife, appeals.

The record presents twenty-six assignments of error, many of which have been elaborately and learnedly argued, and a great number of citations of authorities given by counsel of the respective parties. While we find these arguments and authorities are interesting and instructive, we deem it not necessary to pass upon many of the questions presented and discussed.

The paramount question is whether the court, in a proceeding for the partial distribution of the estate of the decedent, exceeded its authority in distributing to the respondents one-half of the whole estate, or whether the decree so distributing a part of the community property is erroneous?

The contention of counsel for appellant is, substantially, that in such proceeding no one but an heir, devisee, or legatee is entitled to petition for, or have distribution made to him, and that the court is not clothed with legal authority to decree distribution to any other class of claimants; that with respect to the community property the respondents are not heirs, devisees or legatees, and hence, that in decreeing distribution to them of a portion of the community property, the court exceeded its jurisdiction and erred in giving said decree.

Respondents' counsel maintain, in effect, that the respondents being interested in the estate under said agreement and as heirs, the statute gave them a right not only to appear and resist the application of the petitioner, but, in addition, as heirs, to apply for distribution to themselves; that said agreement constitutes a sale and conveyance by each of these parties of all right, title and interest in an undivided one-half of the Foley estate, regardless of whether it was community or separate property; that said agreement was a compromise and settlement of all the questions that then existed, or might ever exist, between the parties concerning the property described in it; that the agreement embraces all the property, both community and separate property; that the court had jurisdiction of said agreement, and of the subject matter and of the parties, and had authority to investigate and determine the rights of the respective parties as heirs, and their rights, under said agreement, and to make distribution accordingly, and that in so doing the court did not exceed its jurisdiction, or err therein.

But "the court may have jurisdiction of the subject matter, and of the parties, and yet the particular judgment rendered in the particular case may be void because in excess of the jurisdiction of the court. The judgment rendered must be one that is authorized by law in the class of cases

to which the case before the court belongs." (Works on . Jurisdiction of Courts, sec. 8.)

A judgment may be both erroneous and void. (Id.)

In *Windsor* v. *McVeegh*, 93 U. S. 282, the court said: " Though the court may possess jurisdiction of a cause, of the subject matter and of the parties, it is still limited in its mode of procedure and in the extent and character of its judgment. It must act judicially in all things, and cannot then transcend the power conferred by law."

In 6 Pet. 691 (U. S.), the court defined jurisdiction to be " the power to hear and determine," and in *Ex parte Reed*, 100 U. S. 13, it is defined " the power to hear and determine and give the judgment rendered."

The inquiry then is: Did the court have the power to hear and determine and give the judgment rendered with respect to the community property in this class of cases or this class of proceedings, a proceeding for the partial distribution of the estate?

"Although district courts are now vested with jurisdiction of probate matters, this jurisdiction, with some exceptions immaterial here, is to be administered under the same principles that formerly applied to the probate court, and under the same rules of practice, in fact, under the same act." (*Douglass* v. *Folsom*, 21 Nev. 447.)

The court must be governed, in proceedings in probate matters, by the rules of practice prescribed by the probate act, and must be governed by the provisions of said act as to the character and extent of the judgment or decree it may give in any particular matter or proceeding before it.

With reference to the partial distribution of estates of deceased persons said act (Gen. Stats. 2919) provides: "At any time after the lapse of four months after issuing of letters testamentary or of administration, any heir, devisee or legatee may present his petition to the court, that the legacy or share of the estate to which he is entitled may be given to him, upon his giving bonds," etc. Sec. 2921: "The executor or administrator, or any person interested in the estate, may appear and resist the application, or any other heir, devisee or legatee, may make a similar application for himself." Sec. 2922: "If at the hearing it appear that the estate is but

little indebted and that the share of the party or parties applying may be allowed to him or them, without injury to the creditors of the estate, the court shall make a decree in conformity with the prayer of the applicant or applicants; provided," etc.

*As to Final Distribution:*     Section 2927:  " Upon the final settlement of the accounts of the executor or administrator, or at any subsequent time, upon the application of the executor or administrator, or any heir, legatee or devisee, or the grantee of the heir, legatee or devisee, the court shall proceed to distribute the residue of the estate, if any, among the persons who are by law entitled."  *  *  *  Section 2929:  " The decree may be made on the application of the executor, or administrator, or of any person interested in the estate."  *  *  *

The legislature has declared when, on whose application, and to whom distribution may be made, in proceedings for partial and final distribution, respectively.   The courts are authorized to act in pursuance of these statutory provisions, and not otherwise, in the distribution of said estates.

The respondents' claim to the one-half of the community property is based on said agreement, as grantees of the appellant.   We are of the opinion that under the above provisions, for partial distribution, none other than an heir, devisee, or legatee, having an interest, as such, in the property for which distribution is asked, is authorized to petition for such distribution; that the court is not authorized to make such distribution to any claimant other than to one entitled to the property as heir, devisee or legatee, and that the court exceeded its jurisdiction and erred in its decree distributing community property to the respondents.

*The Agreement:*  A large portion of the arguments of counsel was devoted to their several contentions as to what property is embraced in said agreement, whether the separate property only, or both the separate and community property.   The consideration and determination of this question were foreign to the proper subject matter before the court, which subject matter was the partial distribution of said estate to the applicants as heirs, under the statute, and not as applicants, as grantees, as parties interested in the estate under and by virtue of said agreement, for, as we

have shown above, as we think distribution could not be properly made to the latter class of claimants in the proceedings then before the court. So, then, it was not proper for the court below to consider and determine the above question in that proceeding, nor proper for this court to do so on this appeal.

*Descents:* There is contention between counsel as to the proper construction of section 2981 of the General Statutes, which provides: "When any person, having title to any estate not otherwise limited by marriage contract, shall die intestate as to such estate, it shall descend and be distributed, subject to the payment of his or her debts, in the following manner": First, it is provided that the property shall descend to the surviving husband or wife and to the intestate's descendants, in certain specified proportions.

"*Second*—If he or she shall leave no issue, the estate shall go in equal shares to the surviving husband or wife, and to the intestate's father.

"*Third*—If there be no issue, nor husband, nor wife, nor father, then in equal shares to the brothers and sisters of the intestate, and to the children of any deceased brother or sister, by right of representation; *provided,* that if he or she shall leave a mother, also, she shall take an equal share with the brothers and sisters."

We are clearly of opinion that it was not the intent of the legislature that, if the intestate leaves no issue and no father, the surviving husband or wife shall take none of the estate, but that the intent was that one-half of the property shall descend and be distributed, subject to the payment of said debts, to the surviving husband or wife, and the other half to the intestate's brothers and sisters and to the children of any deceased brother or sister by right of representation; provided, if the intestate shall also leave a mother she shall share equally with the brothers and sisters. We therefore conclude that under this statute the appellant and all the respondents are heirs of said deceased with respect to said separate property, and in the proportion above named.

The judgment and decree appealed from are reversed.

### ON PETITION FOR REHEARING.

By the Court, BONNIFIELD, J.:

The respondents have petitioned for rehearing on the ground that in their opinion " the court has overlooked some of the facts of the case and has failed to give others their true value."

They say: " Upon the point of jurisdiction we have no quarrel with the law as stated by the court. It is only in the application of the law to the facts of the case that we believe error has been committed."

As to what was stated by this court on appeal to be the law on the point of jurisdiction, and as to its application of the law to the facts of the case will be found reported in 51 Pac. Rep.

Petitioners for rehearing present in their petition, substantially, the same points and arguments as they presented on the hearing of the appeal. These we carefully considered before, and have as carefully considered them again on this petition, and we are satisfied that the law on the point of jurisdiction, as stated by the court and admitted by counsel to be correct, was properly applied to the facts of the case, unless the plain provisions of the statute relating to the partial distribution of the estates of deceased persons should have been disregarded by the court, and this we do not concede.

After stating the allegations contained in the pleadings of the respective parties, counsel say: " Suppose that, under these allegations, the court had found that there was no community property and had ordered distribution of the separate property, one-half to each of the parties, just as distributed in this case, would there have been any question concerning the jurisdiction to distribute the separate property? If not, then it must be that jurisdiction depends upon the evidence produced and not upon the case made by the petitions which is an inadmissible proposition under all decisions." Counsel overlook " the case made by the petitions " as finally submitted.

It is true that by their petition they denied that any of the property was community property and alleged that it was all separate property. But the parties stipulated that cer-

tain described portion of the property was community property and certain described portion was separate property. This stipulation had the same legal effect as if the said denial and allegation had been stricken out of the petition of the respondents by their amendment thereto. The petitions then presented a case for the partial distribution of separate property to the appellant and the respondents as heirs with respect to that property, and a case for the partial distribution of the community property to the appellant, claiming the same as surviving wife of the deceased, and to the respondents, claiming one-half thereof as grantees of the appellant.

Neither petition showed that the respondents were entitled to any portion of the community property, as heirs, and could not do so. Then, can it be said with reason that the court had authority to give a decree distributing it to them under the allegations of the petition of either party or both, without ignoring the provisions of the statute with respect to the distribution of estates of decedents?

We are asked to place a construction upon the said contract entered into between the parties. We held before that the consideration and determination of the meaning of that contract were matters foreign to the proper subject matter before the district court, and that it was not proper for that court to pass upon the questions involved therein in that proceeding, nor proper for this court to do so on this appeal. We are clearly of the same opinion now. Whatever construction this court might give would be mere *dictum*.

The rehearing is denied.