## EX PARTE THOMAS.

### APPEAL from the District Court of Ponce.

No. 76.—Decided June 4, 1907.

HABEAS CORPUS—JUDGMENT NULL OR MERELY ERRONEOUS.—Although mere irregularities of procedure or errors of law committed during the trial cannot be considered in *habeas corpus* proceedings, there is, however, a difference between those cases where the judgment is merely erroneous and where it must be considered null and void, by reason of some irregularity or defect.

ID.—QUESTIONS OF JURISDICTION.—Questions affecting the jurisdiction of the judge or court to render judgment may be considered in *habeas corpus* proceedings.

ID.—The court must have jurisdiction, not only of the person of the accused and of the crime, but of the specific crime with which the accused is charged.

ID.—PARTICIPANTS IN CRIMES—AUTHOR AND ACCESSORY.—In accordance with our statute, an accessory is a person who was known at common law as an accessory after the fact; those who at common law were classified as accessory before the fact are regarded by our Penal Code as principals.

ID.—CONVICTION AS AN ACCESSORY UNDER AN INFORMATION AS PRINCIPAL.—A crime committed by an accessory is distinct from that committed by a principal, and therefore a defendant cannot be convicted as an accessory under an information charging him with the commission of the crime as principal. In order that the court may acquire jurisdiction, it is necessary that an information be filed charging him as an accomplice, because the court is without jurisdiction of any crime not charged in the information.

ID.—CONSENT OF ACCUSED.—The mere consent of the accused that he be convicted as an accomplice, where he has been charged as principal, is not sufficient to confer jurisdiction on the court.

ID.—FORMER JEOPARDY.—Where a defendant is convicted as an accessory under an information charging him as principal, and the judgment is declared null and void, he cannot, upon the filing of a new information against him as an accessory, plead former jeopardy.

The facts are stated in the opinion:
'*Mr. José Guzmán Benítez,* for petitioner.
*Mr. Rossy, fiscal,* for respondent.

MR. JUSTICE WOLF delivered the opinion of the court.

José de Thomas made an application to this court for a writ of *habeas corpus.* The writ was accordingly issued and made returnable to the District Court of Ponce. The application sets out substantially that the petitioner was confined in the district jail of Ponce under the custody of Adolfo Les-

pier, who held the prisoner in response to a sentence of seven years in the penitentiary imposed by the District Court of Humacao; that the said José de Thomas was accused before said court as the principal in the crime of murder in the first degree upon the person of Angel Romero, and that the jury, after hearing and seeing the proof made before the same as presented at the trial, rendered a verdict against José de Thomas, finding him guilty as an accessory to the crime of manslaughter, and that the District Court of Humacao rendered a sentence condemning the said José de Thomas as such accessory to the crime of manslaughter to undergo seven years of confinement in the penitentiary; that the verdict of the jury as well as the sentence rendered by the District Court of Humacao, and the warrant of commitment of José de Thomas are illegal and void, because the information did not specifically set forth the participation of said José de Thomas, then accused of the crime of murder, as such accessory, nor his responsibility in this connection, and that the verdict and the sentence consequently were not in accord with the information, and the warrant could not be authorized by a sentence which is void, as the Supreme Court of Porto Rico had decided in its decision of the 21st of February, 1907, in the case of *The People of Porto Rico* v. *Antonio Paz y Santos.*

The jailer, Adolfo Lespier, in his return showed that he held the prisoner by virtue of a sentence which, copied word for word, is as follows:

"Estados Unidos de América. El Presidente de los Estados Unidos, *ss.* En el nombre y por la autoridad de El Pueblo de Puerto Rico. *El Pueblo de Puerto Rico* v. *José de Thomas.* Delito: Asesinato en primer grado. En la Corte de Distrito de Humacao. Sentencia. Esta causa ha venido ante la corte en virtud del señalamiento previamente hecho para el día veinte de marzo, hallándose presente el Sr. Fiscal J. R. Aponte, en representación de El Pueblo de Puerto Rico y el acusado José de Thomas, por su propia persona y por sus abogados José de Guzmán Benítez y Ulpiano Valdés, habiéndose celebrado el acto de *arraignment* contra dicho acusado por el delito de asesinato en primer grado en cuyo acto el acusado en propia persona hizo la

alegación de no culpable, disponiendo la ley que sea juzgado por un jurado, y habiendo surgido de dicha alegación las cuestiones litigiosas,. fué señalada la vista del juicio para el día veinte del actual, en cuyo tiempo estando presente un jurado de hombres buenos y legales, que. instruído para oir las cuestiones litigiosas y rendir un veredicto recto de acuerdo con la Ley y la prueba, se ha retirado á deliberar trayendo el siguiente verdicto: 'Nosotros el jurado, encontramos al acusado José de Thomas culpable como cómplice del delito de homicidio voluntario.' Y habiéndose preguntado al acusado si existe cualquiera causa ó motivo que impida el pronunciamiento de la sentencia á lo cual ha contestado negativamente; por lo tanto, la corte ordena, adjudica y decreta que el acusado José de Thomas, convicto como cómplice del delito de homicidio voluntario, sufra la pena de siete años de presidio, con trabajos forzados en la penitenciaría de San Juan de Puerto Rico, y las costas del juicio.

"Dada en Humacao, bajo mi firma á los veinte y ocho días del mes de marzo de mil novecientos cinco.—J. A. Erwin, Juez de la Corte de Distrito de Humacao.

"Testifico.—Enrique Rincón, Secretario *District Court.*"

## The English of which would be, translated:

"United States of America. The President of the United States. In the name and by the authority of The People of Porto Rico. In the District Court of Humacao. *The People of Porto Rico* v. *José de Thomas.* Crime: Murder in the first degree. Sentence.—This case has come before the court by virtue of an assignment previously made for the 20th day of March; there being present the *fiscal*, J. R. Aponte, in representation of The People of Porto Rico, and the defendant José de Thomas, in his own person, and with his attorneys, José de Guzmán Benítez and Ulpiano Valdés, and the arraignment against the said defendant for the crime of murder in the first degree having taken place, in which arraignment the defendant in his own person filed a plea of not guilty, and the law providing that he should be tried by a jury, and from this plea issues having arisen, the cause was set for the 20th day of the present month at which time there being present a jury of good and lawful men who, being instructed with respect to the issues, and to render a true verdict in accordance with the law and the facts, retired to deliberate and returned the following verdcit: 'We the jury find the defendant José de Thomas guilty as accessory (*cómplice*) to the crime of manslaughter;' and the

accused having been asked if there were any cause or reason to prevent the rendering of the sentence, to which he replied in the negative, therefore the court orders, adjudges and decrees that the defendant, José de Thomas, convicted as an accessory of the crime of manslaughter, shall suffer the punishment of seven years in the penitentiary at hard labor, in the penitentiary of San Juan, Porto Rico, and to pay the costs of the trial.

"Given under my hand this 28th day of March, 1905.—J. A. Erwin, Judge of the District Court of Humacao.

"Attest: Enrique Rincón, Secretary of the District Court."

The return goes on to set forth that the former sentence was appealed to the Supreme Court and affirmed by that tribunal and that the execution of the same was ordered, by virtue of which and in accordance with the provisions of article 330 of the Code of Criminal Procedure, the imprisonment began on the 30th of December, 1905.

At the hearing before the District Court of Ponce exhibits were made of the opinion of the Supreme Court in the case appealed by petitioner, as well as in the case of *The People of Porto Rico* v. *Antonio Paz y Santos,* the latter case being decided on the 21st of February, 1907.

The District Court of Ponce, on the 11th of March, 1907, denied the petition of *habeas corpus,* and the case was brought to this court on appeal. In the argument here the *fiscal* urged that it was settled by the jurisprudence of the Supreme Court of the United States, as well as by the decision of this court in the case of *Ex Parte Hobart S. Bird,* that where a person is confined in the penitentiary by virtue of the judgment of a court having jurisdiction of the person and the subject matter of the crime, the legality of his confinement cannot be collaterally attacked by the writ of *habeas corpus.* This is unquestionably the general statement of a very broad principle. It has been settled, time and again, that the writ of *habeas corpus* cannot be made to perform the office of a writ of error, or of an appeal, and that mere irregularities of procedure, or errors of law in the trial and adjudication of a case cannot be examined by virtue of this writ.

(12 American & English Encyclopedia of Law, pp. 246-247; Bailey on Jurisdiction, sec. 24, 25 and 26; *Ex Parte Parks,* 93 U. S., 18, and cases therein cited; *Ex Parte Hollis,* 59 Cal., 405, 407; *United States* v. *Pridgeon,* 154 U. S., 48, and cases cited.)

A distinction, however, is made between cases which are merely irregular or erroneous, and those in which the judgment by virtue of some defect must be considered as void; and for the purposes of a collateral attack, no distinction seems to be made by the courts between a civil and a criminal judgment. (See note to *Morrill* v. *Morrill,* 23 Am. St. Rep., 110; *Tenney* v. *Taylor,* 1 App. G. C., 227; *United States* v. *Pridgeon,* 153 U. S., 48; *Windsor* v. *McVeigh,* 83 U. S., 282; *Russell* v. *Shurtleff,* 28 Colo., 414; 89 Am. St. Rep., 216, and note on p. 221.)

With respect to criminal judgments, two leading cases on the subject are *The People* v. *Liscomb,* 60 N. Y., 571; 19 Am. Rep., 211; and the case of *Ex Parte Lange,* reported in 18 Wall., at page 163. The case of *Ex Parte Lange* was one where the statute gave power to punish by fine or imprisonment, and the court imposed a sentence of fine and imprisonment. The fine was paid, and the court during the same term attempted to modify the judgment by imposing the imprisonment instead of the former sentence of fine and imprisonment. The court, in its opinion, after discussing the matter of judgment in general, and the errors or irregularities of judgments in particular, said:

"But it has been said that, conceding all this, the judgment under which the prisoner is now held is erroneous, but not void; and as this court cannot review that judgment for error, it can discharge the prisoner only when it is void.

"But we do not concede the major premise in this argument. A judgment may be erroneous and not void, and it may be erroneous because it is void. The distinctions between void and merely voidable judgments are very nice, and they may fall under the one class or the other as they are regarded for different purposes.

"We are of opinion that when the prisoner, as in this case, by reason of a valid judgment, had fully suffered one of the alternative punishments to which alone the law subjected him, the power of the court to punish further was gone. That the principle we have discussed then interposed its shield, and forbade that he should be punished again for that offense. The record of the court's proceedings, at the moment the second sentence was rendered, showed that in that very case, and for that very offense, the prisoner had fully performed, completed, and endured one of the alternative punishments which the law prescribed for that offense, and had suffered five days' imprisonment on account of the other. It thus showed the court that its power to punish for that offense was at an end. Unless the whole doctrine of our system of jurisprudence, both of the Constitution and the common law, for the protection of personal rights in that regard, are a nullity, the authority of the court to punish the prisoner was gone. The power was exhausted; its further exercise was prohibited. It was error, but it was error because the power to render any further judgment did not exist.

"It is no answer to this to say that the court had jurisdiction of the person of the prisoner, and of the offense under the statute. It by no means follows that these two facts make valid, however erroneous it may be, any judgment the court may render in such case. If a Justice of the Peace, having jurisdiction to fine for a misdemeanor, and with the party charged properly before him, should render a judgment that he be hung, it would simply be void. Why void? Because he had no power to render such a judgment. So, if a court of general jurisdiction should, on an indictment for libel, render a judgment of death, or confiscation of property, it would, for the same reason, be void. Or if, on an indictment for treason, the court should render a judgment of attain, whereby the heirs of the criminal could not inherit his property, which should, by the judgment of the court, be confiscate to the State, it would be void as to the attainder, because in excess of the authority of the court, and forbidden by the Constitution."

In the case of *Windsor* v. *McVeigh,* reported in 93 U. S., page 282, the Supreme Court says:

"The doctrine invoked by counsel, that, where a court has once acquired jurisdiction, it has a right to decide every question which arises in the cause, and its judgment, however erroneous, cannot be

collaterally assailed, is undoubtedly correct as a general proposition, but like all general propositions, is subject to many qualifications in its application. All courts, even the highest, are more or less limited in their jurisdiction. They are limited to particular classes of actions, such as civil or criminal; or to particular modes of administering relief, such as legal or equitable; or to transactions of a special character, such as arise on navigable waters, or relate to the testamentary disposition of estates; or to the use of particular process in the enforcement of their judgments. (*Norton* v. *Meador,* Circuit Court for California.) Though the court may possess jurisdiction of a cause, of the subject matter, and of the parties, it is still limited in its modes of procedure, and in the extent and character of its judg-ments. It must act judicially in all things, and cannot then transcend the power conferred by law. If, for instance, the action be upon a money demand, the court, notwithstanding its complete jurisdiction over the subject and parties, has no power to pass judgment of imprisonment in the penitentiary upon the defendant. If the action be for libel or personal tort, the court cannot order in the case a specific performance of a contract. If the action be for the possession of real property, the court is powerless to admit in the case the probate of a will. Instances of this kind show that the general doctrine stated by counsel is subject to many qualifications. The judgments mentioned, given in the cases supposed, would not be merely erroneous. They would be absolutely void, because the court in rendering them would transcend the limits of its authority in those cases. (See the language of Mr. Justice Miller, to the same purport, in the case of *Ex Parte Lange,* 18 Wall., 163.) So it was held by this court in *Bigelow* v. *Forrest,* 9 *id.,* 351, that a judgment in a confiscation case, condemning the fee of the property was void for the remainder, after the termination of the life estate of the owner. To the objection that the decree was conclusive that the entire fee was confiscated, Mr. Justice Strong, speaking the unanimous opinion of the court, replied: 'Doubtless a decree of a court having jurisdiction to make the decree, cannot be impeached collaterally; but, under the act of Congress, the district court had no power to order a sale which should confer upon the purchaser rights outlasting the life of French Forrest (the owner). Had it done so, it would have transcended its jurisdiction.' '' (*Id.,* 350.)

In the case of *Ex Parte Bain,* 121 U. S., 13-14, there was an amendment to an indictment without a representation by

a grand jury. The proceeding was attacked on *habeas corpus,* and the Supreme Court says:

"It is of no avail, under such circumstances, to say that the court still has jurisdiction of the person and of the crime; for, though it has possession of the person, and would have jurisdiction of the crime, if it were properly presented by indictment, the jurisdiction of the offense is gone, and the court has no right to proceed any further in the progress of the case for want of an indictment." (And the court cites *Ex Parte Lange,* 18 Wall., 163; *Ex Parte Parke,* 93 U. S., 18; *Ex Parte Wilson,* 114 U. S., 417.)

In *United States* v. *Walker,* 109 U. S., 258, approving *Ex Parte Lange,* the court declaring void an order of the probate court of the District of Columbia says:

"It is no answer to this to say that the court had jurisdiction of the person of the prisoner, and of the offense under the statute. It by no means follows that these two facts made valid, however erroneous it may be, any judgment the court may render in such case."

A number of authorities hold that the jurisdiction of a court or judge to render a particular judgment or sentence is always the proper subject of inquiry on *habeas corpus.* The authorities are collected in a note to *Koopke* v. *Hill,* 87 Am. St. Rep., pages 172 and 173. There is likewise a full discussion of the question of jurisdiction in the case of *Ex Parte Cox,* 3 Idaho, 530. The Idaho statute on *habeas corpus* is the same as our own. The sentence in *Ex Parte Cox* was pronounced void by reason of an excess in the number of years imposed on the prisoner.

All sorts of irregularities and errors have been brought before the courts on *habeas corpus.* The exact question presented for review here seems not to have arisen—namely, that whether a person charged as a principal and convicted as an accessory could say that the judgment in such case was void and not merely erroneous. That such a judgment is erroneous has been settled beyond question by this court in the case of

*The People* v. *Antonio Paz y Santo*.  In that case much juris-
prudence of Texas is cited, but the decisions of the Supreme
Court of California are all to the same effect.

In the case of *Ex Parte Hobart S. Bird* this court bore in
mind the distinction that was made between void judgments
and those merely erroneous by saying:

"It is plain from an examination of these sections that the only
one applicable hereto is paragraph 1 of section 483, declaring that
when the jurisdiction of such court or officer has been exceeded the
prisoner may be discharged.  There can be no doubt, after a careful
review of the whole record, and the reasons assigned by the applicant
for his discharge that in this case the district court had jurisdiction
of the offense charged and of the person of the defendant, and of the
subject matter of the case, and that the jurisdiction was not in the
least exceeded, and that the Supreme Court had appellate jurisdiction
to decide the same on appeal.

"Nothing has been shown in the application or the argument which
can successfully attack this jurisdiction or the manner of its exercise;
and for this reason, as well as others herein set forth the application
can not prevail."

Thus it will be seen that this court recognized that three
elements must exist—jurisdiction of the person of the defend-
ant, of the crime, and of the particular offense charged.

In the case of *The People* v. *Liscomb supra,* the court in
an opinion by Mr. Justice Allen cites *Ex Parte Lange,* and
says:

"Mr. Hill, in his valuable note to the McLeod case, 3 Hill, 647,
has carefully, and with his usual accuracy, epitomized the law relat-
ing to the writ of *habeas corpus,* and pointed out the departures under
the statutes of this State, from the common law, and the propositions
enunciated by him are well sustained by the authorities cited in the
note, and so far as applicable to the case in hand, may be briefly
summed up.  As well at common law as under the statutes of this
State, if the party is detained on process, the existence and validity
of the process are the only facts in issue, and the right to inquire into
the validity of the process is coextensive with that which is allowed
in an action for false imprisonment.  If the process is valid on its

face, it will be deemed *prima facie* legal, and the prisoner must assume the burden of impeaching its validity by showing a want of jurisdiction. Error, irregularity, or want of form, is no objection; nor is any defect which may be amended or remedied by the court from which it issues. If there was no legal power to render the judgment or decree, or issue the process, there was no competent court, and consequently no judgment or process. All is *coram non judice* and void."

In a concurring opinion Mr. Justice Rapallo says:

"The suggestion is made that under our statute a party detained 'under a final judgment or decree of any competent tribunal of civil or criminal jurisdiction' is precluded from the benefit of this writ. That objection is, I think, sufficiently answered in the opinion of my learned brother, Allen. According to the terms of the statute the court under whose final judgment the prisoner is detained must be not only a court of civil or criminal jurisdiction, but it must be competent. This word can have no operation unless it means competent to render such judgment."

Thus it will be seen that the statute under which the court in New York was operating is practically identical with section 482 of our own Code of Criminal Procedure.

The facts of the case were that the relator Tweed, who was tried on the indictment containing 220 separate counts was found guilty upon 204 of the counts, and upon 12 of the counts was sentenced to 12 successive terms of imprisonment of one year each, and to pay a fine of $250 for each count; and upon other counts, two additional fines amounting in all to $12,500. The maximum punishment fixed for a misdemeanor of the character charged was one year's imprisonment and a fine of $250. Relator having been imprisoned one year and having paid one fine of $250, made application for a writ of *habeas corpus* to inquire into the legality of the continued imprisonment. It was held that the sentence for a single offense was good, and that the further sentences were in excess of the jurisdiction of the court, and absolutely void, and not merely erroneous; that the prisoner after the execution

of one sentence was entitled to be discharged on *habeas corpus*. Here there was no doubt that the court had jurisdiction of the person of the defendant, and of any one particular offense charged.

At that time the common law, with respect to indictments prevailed in the State of New York, and the court holds that there was no authority in that State to permit the joinder of several criminal charges in one indictment, in spite of the different practice in England and some of the other United States.

The court states that there is no objection to stating the same offense in as many different ways as may be deemed expedient. The court also cites the leading English case of *Crepps* v. *Durden*, 2 Cowp., 640. That was an action of trespass, the occasion for which lay in a conviction by Durden, a Justice of the Peace of Crepps for "exercising the ordinary calling of a party on Sunday," and distinct sales being shown on a particular Sunday, Durden inflicted several penalties on Crepps. The action was sustained, although the convictions were not quashed. The jurisdiction of the magistrate to convict and punish for one offense was not questioned, but the English court adjudged that he had no jurisdiction whatever in respect to the three last convictions, for the reason that there could be but one offense, and one punishment for the acts of a single day, and the conviction was held void by reason of the excess of jurisdiction.

In the case of *Ex Parte Ciambonini*, 117 Cal., 573, it is said:

"Petitioner was convicted in the police court of the city of Stockton of the crime of selling intoxicating liquors to a minor under the age of 18 years. He was sentenced to pay a fine of $100, and in default of payment to be imprisoned for 100 days in the city jail. C. P. Rendon, who acted as judge of the police court, was at all times a Justice of the Peace of the city of Stockton.

"Petitioner contends that the judgment against him was void because the police court of the city of Stockton had no legal existence."

This fact was conceded, but it was insisted that C. P. Rendon, who acted as judge of the police court, was at all times a Justice of the Peace, and therefore had jurisdiction of the person and of the offense of the offender.  The court says:

"A court is a place where justice is legally administered.  This first essential of a legal court being lacking, the defendant has had no trial under the laws of the land.

"For the same reason it cannot be said that the judgment may be upheld because the judicial officer had jurisdiction of the offense and offender as justice of the peace.  A *de jure* judge of a legally constituted court can only exercise his jurisdiction in the manner prescribed by law.  As is said by the Supreme Court of the United States in *Windsor* v. *McVcigh*, 93 U. S., 282: 'Though the court may possess jurisdiction of a cause, of the subject matter, and of the parties, it is still limited in its mode of procedure, and in the extent and character of its judgment.  It must act judicially in all things, and cannot then transcend the power conferred by law.'  The Justice of the Peace could only have tried defendant in his justice court, and no validity could attach to his judgment rendered in any other forum.  He might as well have tried him by drumhead court martial as to have rendered judgment in an illegal police court.  It is essential to the validity of a judgment that the court which renders it shall have jurisdiction.  (*Anthony* v. *Kasey*, 38 Va., 338; 5 Am. St. Rep., 227.)  The court which rendered this judgment, being an unconstitutional tribunal, had no jurisdiction whatever.

"The case of *Ex Parte Reilly*, 85 Cal., 632, has not been overlooked.  The views here expressed may be found at variance with those of the earlier case, but we think the sounder construction of the law is that here given.  It follows that the petitioner should be discharged, and it is ordered accordingly."

Conceding the similarity of the principles applicable to civil and criminal judgments, it is well to recognize that in the courts of almost every state a judgment which is not responsive to the issues is held to be void, and the Supreme Court of the United States in the case of *Reynolds* v. *Stockton,* 140 U. S., 270, says:

"But without multiplying authorities, the proposition suggested by those referred to, and which we affirm, is, that in order to give

a judgment, rendered by even a court of general jurisdiction, the merit and finality of an adjudication between the parties, it must, with the limitations heretofore stated, be responsive to the issues tendered by the pleadings."

The *fiscal* of this court in addition to referring us to the case of Hobart S. Bird cites *Ex Parte Shaw,* and *In re Lehmkulh* and some other cases in the Supreme Court of the United States. So far as we have been able to verify the references, these cases all state the general proposition that mere errors or irregularities of law cannot be made the subject of review by writ of *habeas corpus,* which proposition we have heretofore considered.

*In re Eckart,* 166 U. S., 481, related to an application for the writ of *habeas corpus,* and the court held that when a state court has jurisdiction of an indictment for murder and the laws of the State divide that offense into three degrees, and make it the province of the jury to determine under which degree the case falls, the sentencing of the prisoner as for the crime of murder in the first degree, without a finding by the jury as to which degree he was guilty of, though erroneous, was not a jurisdictional defect, remediable by writ of *habeas corpus,* because the verdict was sufficiently certain to authorize the imposition of punishment for the highest grade of the offense charged.

The court also said:

"The case presented by the record is not within any of the exceptions to the general rule, that when a court has jurisdiction by law of the offense charged, and of the party who is so charged, its judgments are not nullities which can be collaterally attacked." (Citing *United States* v. *Pridgeon,* 153 U. S., 48, which in turn cites the principal cases of *Ex Parte Lange,* and *People* v. *Lipscomb,* which mark the rule and its exceptions.)

*In re Snow,* 120 U. S., 286, is also a case where the rule and the exceptions are considered, and the case of *Crepps* v. *Durden* analyzed; and see also *Ex Parte Reed,* 100 U. S., 13.

How does the case at bar differ from any other case where the court lacked jurisdiction by reason of a failure to reindict, as was made the subject of writs of *habeas corpus* in the cases of *Ex Parte Bain* and *Ex Parte Wilson?* Under section 35 the parties to crimes are classified as principals and accessories, so that under our Penal Code the only person who is known as an accessory is the one who was known at common law as being an accessory after the fact. Anybody who would have been known as an accessory before the fact at common law is now known as a principal. The judgment in the case at bar shows on its face that the prisoner was convicted of being an accessory. The use of the word *cómplice* in the judgment can refer to no other person than the one defined by sections 35 and 37. The punishment for an accessory is defined by section 18 of the Penal Code, and the prisoner was given the full extent of the law.

Under section 36 of the Penal Code all persons concerned in the commission of a crime, whether they directly commit the crime or aid and abet in its commission are guilty as principals.

Section 37 says:

"All persons who after full knowledge that a felony has been committed, conceal it from the proper authorities, or harbor and protect the person charged with or convicted thereof, are accessories."

As we have seen, the authorities of the various States are to the effect that one who has been charged as a principal cannot be convicted as an accessory. Provision is made by the Code of Criminal Procedure that a man must be tried on an information presented by the *fiscal*. (See sec. 3 and 6 *et seq.*) While no presentment by a grand jury is required in Porto Rico, yet a man may not be charged with one crime and convicted of another. The mere fact that the crime of being an accessory is so closely allied to the crime for which his principal may be punished does not alter the fact that the two crimes are distinct. Ample provisions are made by our

Code of Criminal Procedure for beginning anew a prosecution where the evidence is insufficient to sustain a prosecution already begun. (See sec. 308 of the Code of Criminal Procedure, etc.)

The District Court of Humacao, if it obtained jurisdiction over the prisoner in this particular case, it must have been by virtue of the information filed against him as principal.

By virtue of that information it had authority to try him for the crime of murder, and to convict him of any lesser crime of *homicidio,* but by the authority of the courts in the United States, as well as by our own decision in the case of Antonio Paz y Santos the crime of being an accessory is a distinct offense.

While we have no requirement in regard to an indictment by a grand jury yet the similar safeguard which our statutes have thrown around the person of a prisoner is that he must be proceeded against by an information sworn to by a *fiscal.* His mere arrest is not sufficient to convict him of any crime whatsoever. The court to acquire jurisdiction must have an information before it. If that information is limited in its extent, the court has no jurisdiction to proceed outside of its limits.

In the case of *The People* v. *Granice* reported in 50 Cal., 448, the court says:

"During the progress of the trial of this action, the defendant offered to prove that certain words had been inserted in the indictment, and that certain other words of the indictment had been changed since it was filed and became a record of the court. Objection to such proof was made by the prosecution, on the ground that the defendant's attorney had been informed by one of the attorneys for the prosecution, before the defendant pleaded to the indictment, 'that the indictment had been tampered with after it had been found by the grand jury'; and 'that there were plenty of witnesses to prove that it had been tampered with.' The court refused to permit the defendant to make the proof. It is the duty of either party to bring to the attention of the court any alteration of the record of a pending proceeding, promptly, and at the earliest opportunity at which

it can be done, after the alteration has come to his knowledge. In this case, that duty was as incumbent on the prosecution as on the defendant. Although the defendant did not promptly move in the matter, he is not thereby precluded from showing that alterations have been made in the indictment. The indictment, as it stood before the alleged alterations were made, only charged the defendant with the crime of manslaughter, but as altered, it charged him with the crime of murder. The court, under that indictment, had no jurisdiction to try him for any crime other than such as charged in the indictment when it was filed by the grand jury. Consent on the part of the defendant, whether given directly or inferred from his acts or omissions, cannot confer jurisdiction upon the court to try the defendant for any other crime than such as is charged in the indictment, as found and returned by the grand jury.

''Judgment and order reversed, and cause remanded for a new trial.''

In the case of *Granice,* as in the case of *Ex Parte Bain* in the Supreme Court of the United States, there was an attempt to amend the information, but the court held that another information was necessary, and the failure to file it deprived the court of jurisdiction. In the case of José de Thomas there never was an attempt to charge him with the crime of being an accessory.

In the State of Nevada, whose statutes it seems follow California, they have a provision similar to section 201 of our Penal Code which makes all murder committed in the perpetration of arson, rape, or burglary, murder in the first degree.

In the case of *Ex Parte Dela,* 83 Am. St. Rep., 603, which was an application for the writ of *habeas corpus,* the petitioner had been charged with murder in the first degree and convicted of rape. The court says on page 609:

''It is conceded that the court had jurisdiction of the person of the petitioner, and jurisdiction of the subject matter—namely, the crime of murder, with which he was charged. It is also conceded that the court had jurisdiction to try and punish a person charged with rape. But can we hold, under the showing made by the record, that

the court had jurisdiction to render the judgment of imprisonment in this particular case?

"It is not sufficient to say that as the court has jurisdiction of the person, and jurisdiction to try, convict and punish for certain crimes, it necessarily has the jurisdiction over the subject matter in a particular case.

"The exercise of jurisdiction in this and all cases of felony depends upon certain indispensable conditions and requirements, the absence of which renders the action of the court not merely irregular, erroneos and voidable, but absolutely void. By section 8, article 1, of the constitution, it is provided, in prohibitive terms, among other matters, that a person shall not be tried for a capital or other infamous crime (except in certain specified cases, of which the case at bar is not one), except on presentment or indictment of a grand jury, and that a person shall not be deprived of his life, liberty, or property without due process of law. Can it even be pretended that the court, in the face of these direct and prohibitive terms of the constitution, could render a valid judgment of imprisonment for an offense of which it has jurisdiction without presentment or indictment charging the particular offense? Would not the action of the court in such proceeding be utterly void, because of excess of jurisdiction and because it deprived the party of his liberty without due process of law?

"The question involved is not one of irregularity, growing out of rules of procedure, but is one of substantive law, based upon the direct terms of a constitutional guaranty. It is claimed that the record shows that the prisoner was indicted, tried, convicted, and sentenced for the crime of murder. By supplying presumptive facts, this contention is probably correct; but the proven facts of the record contradict and impeach these presumptions, and show conclusively that the petitioner was convicted of the crime of rape—a crime for which he was neither indicted nor tried and of which he could not have been convicted under the charge contained in the indictment."

In the case at bar the court was probably misled by the intimate connection of the crime charged with the crime of which the prisoner was finally found guilty. A similar instance might be supposed of where a man was charged with embezzlement and found guilty of robbery, where there was no statute authorizing such finding.

It is a matter for the legislature to say if it thinks it wise

that a man charged of murder may be convicted as an accessory, but so long as the legislature has not done so, the courts are limited to the crimes included within the offense charged by the information. How far a court may go is shown by *In re Eckart,* 166 U. S., 481, quoted above. In the case before us there was no attempt to amend, and the only thing the court had before it was the information which did not give it jurisdiction to try for the offense of being an accessory. While it seems probable that the prisoner charged with murder was willing to be convicted as an accessory, yet as we have seen in the case of Granice his mere consent could not confer jurisdiction.

The court, as we have said, fell into the error of thinking that this crime was included in the information. The prisoner may have fallen into the same error. On appeal to this court it was expressly stated by him that he made no objection to the judgment, except so far as the sentence was excessive.

The court below not having jurisdiction the fact that this court affirmed its judgment, does not change the character of the judgment under which he was finally condemned. That judgment was a nullity, and therefore José de Thomas has never been legally convicted of any crime, and could never make a plea of second jeopardy, which has sometimes been made the test of whether a previous judgment of conviction is valid or not.

The judgment of the District Court of Humacao being void the prisoner is entitled to be released and the case must be sent back to the District Court of Ponce with instructions to discharge the prisoner.

*Accordingly decided.*

Chief Justices Quiñones and Justices Hernández and Figueras concurred.

Mr. Justice MacLeary dissented.